JERRY A. ORNATEK, Appellant, v. NEVADA STATE BANK, a State of Nevada Banking Corporation, and VERNON G. McDANIEL, Respondents.

No. 8406

January 19, 1977                    558 P.2d 1145

*Roy L. Nelson II,* of Las Vegas, for Appellant.

*Lionel Sawyer & Collins,* and *Andrew S. Brignone,* of Las Vegas, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

This appeal, pursuant to a NRCP 54(b) certification, is from a partial summary judgment for Nevada State Bank and Vernon G. McDaniel, its vice-president, in a slander action commenced by Jerry Ornatek. There remains pending in the court below Ornatek's claim for damages flowing from an alleged breach of an implied contract not to release confidential information. We agree with the district court that the record does not present an issue of material fact with regard to the cause of action alleging slander and affirm the partial summary judgment.

The charge of slander levelled by Ornatek against the Nevada State Bank and its vice-president, Vernon McDaniel, rests solely upon three statements made by McDaniel in conversations with officers of the First National Bank. It is claimed that such statements attack the credit worthiness of Ornatek or impute his insolvency. We turn to examine those statements and the circumstances within which they were uttered.

Before moving to Las Vegas, Ornatek was employed in banking in Arizona for several years. In Las Vegas, he worked

in the loan department of Nevada National Bank before transferring to First National Bank as a loan officer in October 1974.

In his first eight months after moving to Nevada, Ornatek borrowed money from Nevada State Bank. In addition to a credit reserve account with a $2,400 limit, he borrowed $2,000 on two separate occasions which he repaid before maturity. The second of these loans originally had been denied by McDaniel but was granted by another loan officer after McDaniel went on vacation.

His largest loan, $4,700 on November 12, 1974, to mature May 12, 1975, was obtained at a branch bank of Nevada State Bank. This occurred after Ornatek had transferred to the First National Bank as a loan officer.

On November 25, 1974, McDaniel called Mr. Fruzza, manager of the main office of First National Bank to ask "where Jerry Ornatek was working at that time for FNB" and said that "he was concerned about a $4,700 note which Jerry Ornatek had with NSB."

On the same day, McDaniel called Mr. Busch at First National about another customer, and during the course of that conversation inquired whether Ornatek had applied for or had any loans with FNB.

Finally, Mr. Siefert, regional vice-president of FNB telephoned McDaniel to clarify information regarding Ornatek's indebtedness to Nevada State Bank. He was advised by McDaniel that NSB had made some loans to Ornatek, that he had a ready reserve account, and that all loans had been paid in a satisfactory manner.

As a result of the information given by McDaniel, FNB conducted an investigation of Ornatek and learned that he had misrepresented his indebtedness on his employment application and fidelity bond application forms. Moreover, he had failed to comply with FNB policy requiring officers to disclose all loans from other banks within ten days to the board of directors of FNB. Consequently, Siefert met with Ornatek to ascertain whether Ornatek could reduce his debt load to a level acceptable to FNB and thereby continue his employment as a loan officer. Ornatek could not do so and, at Siefert's suggestion, resigned his position with FNB on December 6, 1974.

The record discloses a settled practice in Las Vegas for banks to exchange limited loan information and, with regard to bank employees, to determine their indebtedness.

1. The statements of McDaniel in the context within which they were made do not, as a matter of law, constitute either slander per se or per quod. Words, charged to be either libelous or slanderous per se "are to be taken in their plain and natural import according to the ideas they convey to those to whom they are addressed; reference being had not only to the words themselves but also to the circumstances under which they were used." Talbot v. Mack, 41 Nev. 245, 262, 169 P. 25 (1917); Las Vegas Sun v. Franklin, 74 Nev. 282, 329 P.2d 867 (1958).

McDaniel said nothing to officers of the First National Bank which carried a defamatory meaning. His concern about Ornatek's debt to the Nevada State Bank is simply an expression of concern. It did not impugn the integrity of Ornatek nor reflect upon his ability as a loan officer. Indeed, McDaniel told Siefert of the First National Bank that Ornatek's prior loans had been paid in satisfactory manner. It is clear that the ensuing problems of Ornatek with First National Bank were caused by his own misrepresentations to that bank concerning his indebtedness, and not by the communications which McDaniel had with officers of First National Bank.

Words may be slanderous per quod when the defamation does not appear from the words themselves, but arises from extrinsic circumstances, when viewed with the statement, conveys a defamatory meaning. W. Prosser, Handbook of the Law of Torts § 111 (4th ed. 1971). Such extrinsic facts are not here present. Indeed, it is apparent that Nevada State Bank had no problems with Ornatek regarding the payment of debts or with his work.

2. Other defenses to the charge of slander submitted by Nevada State Bank and McDaniel (truth, privilege, lack of damage) need not be discussed in view of our disposition of this appeal.

Affirmed.

BATJER, C. J., and ZENOFF, MOWBRAY, and GUNDERSON, JJ., concur.