DONALD M. FINK, Appellant, v. RICHARD A. OSHINS, Respondent.

No. 36055

July 17, 2002

49 P.3d 640

*Graziadei & Cantor, Ltd.,* Las Vegas, for Appellant.

*Pearson, Patton, Shea, Foley & Kurtz,* Las Vegas, for Respondent.

---

# OPINION

*Per Curiam:*

In this appeal we consider the scope of an attorney's privilege as a defense to defamation actions.

## FACTS

Richard A. Oshins, Esq., created the "Timothy St. James 1994 Irrevocable Trust" for Dr. Timothy St. James and his family. According to the trust agreement, Denise St. James, Dr. St. James' wife, was named as the primary beneficiary, and the couple's two children were named as secondary beneficiaries. Complying with tax law requirements, the trust agreement provided for two different types of trustees, a family trustee and an independent trustee. The trust agreement named Denise as the family trustee and Donald M. Fink, an insurance salesman who had sold insurance products to Dr. St. James, as the independent trustee. As the family trustee, Denise had the power to control the identity of the independent trustee, allowing her to remove the named individual under certain conditions.

On June 21, 1995, Dr. St. James was killed in an automobile accident. As dictated by the trust agreement, Denise and Fink then became trustees.

Denise asserts that she began "losing faith" in Fink soon after her husband's funeral. According to Denise, Fink told her that as trustees they "could draw as much or as little in fees from the trust" as they wanted, "around $30,000 plus per year, but, he stated, 'Of course, I'll be receiving much more than you because I'll be doing all the work.'" Fink's apparent attitude was, in Denise's words, a "red flag." She explained, "This shocked me because it sounded like [Fink] thought there was money just growing on a tree somewhere and he could take as much as he wanted."

Fink later contacted Oshins regarding the trust. During the conversation, Fink allegedly expressed concern about allowing Denise to participate in the beneficial enjoyment of trust assets because Dr. St. James had been planning to divorce Denise before his death and because Dr. St. James had transferred assets offshore in order to conceal them from Denise. Fink explained that he wanted to use the trust assets solely for the benefit of the St. James children. Concerned about the emerging conflict, Oshins recommended that Fink consider resigning as independent trustee and hiring independent counsel.

According to Oshins, during a later conversation Fink allegedly stated that he intended to invest the trust's insurance proceeds with his business partners. He also proposed charging the trust an annual fee of 1 to 1½ percent, approximately $20,000-30,000, for his services. Oshins advised Fink not to invest the trust's insurance proceeds because that was Denise's responsibility as the family trustee. Oshins also told Fink that Fink's proposed fees were excessive. Consequently, Fink threatened to delay obtaining the insurance proceeds or to use them to fight for his right to control the trust.

Thereafter, Denise and Oshins had a conversation, which Denise summarized as follows: "Mr. Oshins told me that Don Fink had told him that he was hiding some of Tim's assets offshore in order to conceal them from me." Denise asserts that this information "caused [her] to further lose trust in Mr. Fink." Denise then informed Fink that she would be removing him as the independent trustee. Fink allegedly responded, "I will drain you dry till you don't have a dime left."

Denise retained another attorney to take care of certain matters concerning her deceased husband's estate and to assist Oshins in certain trust matters, including having Fink removed as independent trustee. In February 1996, Denise notified Fink that he was being removed as independent trustee based on the excessiveness of his proposed fees and based on his failure to inform her of his drug-related criminal history, a disclosure required by the trust documents. Fink then sued Denise, seeking to prevent his removal. The lawsuit was settled in 1997 for an undisclosed amount purportedly in Fink's favor.

The facts regarding Oshins' statements to Denise emerged during Fink's action to prevent his removal. In July 1997, Fink filed the present action against Oshins, asserting, among other claims, that Oshins had defamed him in communications with Denise and various other individuals.[1]

During discovery in this lawsuit, Fink's counsel deposed Dr. Richard Lewin, M.D., who was a client of both Oshins and Fink in their respective roles as trust attorney and insurance salesman. Dr. Lewin testified that in the summer and fall of 1996 he and Oshins had conversations to discuss Dr. Lewin's estate plan. During those conversations, Oshins mentioned Fink's drug problem and his alleged wrongful interference with the St. James trust. According to Dr. Lewin, Oshins had told him either expressly or impliedly that Fink was a "thief." Fink intended to amend his complaint to assert another defamation claim based on this new information, but he was unable to do so before summary judgment was granted in Oshins' favor.

---

[1] Fink's claims regarding these other individuals have not been resolved and are not pertinent to this appeal.

Oshins moved for summary judgment, asserting that an absolute or a conditional privilege barred Fink's claims. Following a hearing, the district court granted partial summary judgment, concluding that Oshins' statements to Denise and to Dr. Lewin were absolutely privileged. But the district court refused to grant summary judgment as to Fink's claims that were based on Oshins' statements made to the other individuals named in the complaint. Also, the district court did not rule on Oshins' conditional privilege defense. After denying Fink's motion for reconsideration, the district court certified its order as a final judgment. Fink now appeals the district court's grant of partial summary judgment.

## DISCUSSION

Although the district court's order granted only partial summary judgment, because it adjudicated Fink's claims that were based on Oshins' statements to Denise and Dr. Lewin, we may review the order insofar as it pertains to those claims.[2] We will uphold a district court's grant of summary judgment only if a review of the record in the light most favorable to the nonmoving party demonstrates that there are no genuine issues of material fact.[3] In this case, the propriety of the district court's summary judgment depends on whether the court correctly applied the absolute privilege, a question of law that we review de novo.[4]

### Oshins' statements to Denise St. James

Fink first challenges the district court's grant of summary judgment regarding Oshins' statements to Denise. As evidence of Oshins' alleged defamation, Fink points to the affidavit in which Denise asserted, "Mr. Oshins told me that Don Fink had told him that he was hiding some of Tim's assets offshore in order to conceal them from me." The district court concluded that Oshins' statements were absolutely privileged and granted summary judgment to Oshins accordingly. On appeal, Fink contends that the district court erred in applying the absolute privilege.

[Headnotes 1–3]

In *Circus Circus Hotels v. Witherspoon*, this court recognized "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely

---

[2]*See* NRCP 54(b) (allowing the district court to enter final judgment as to "one or more but fewer than all of the claims" in cases presenting multiple claims).

[3]*Day v. Zubel,* 112 Nev. 972, 977, 922 P.2d 536, 538 (1996).

[4]*See Circus Circus Hotels v. Witherspoon,* 99 Nev. 56, 62, 657 P.2d 101, 105 (1983) (noting that the absolute privilege is a question of law); *SIIS v. United Exposition Services Co.,* 109 Nev. 28, 30, 846 P.2d 294, 295 (1993) (noting that questions of law are reviewed de novo).

privileged."[5] The policy behind the absolute privilege, as it applies to attorneys participating in judicial proceedings, is to grant them "as officers of the court the utmost freedom in their efforts to obtain justice for their clients."[6] This privilege, as its name indicates, is absolute: it "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff."[7] The absolute privilege is for the court to apply.[8]

The scope of the absolute privilege is quite broad. The defamatory communication "need not be strictly relevant to any issue involved" in "the proposed or pending litigation,"[9] it only need be "in some way pertinent to the subject of controversy."[10] Further, the privilege applies not only to communications made during actual judicial proceedings, but also to "communications preliminary to a proposed judicial proceeding."[11] The scope of the privilege does, however, have limits. When the defamatory communication is made before a judicial proceeding is initiated, it will be cloaked with immunity only if the communication is made "in contemplation of initiation" of the proceeding.[12] In other words, at the time the defamatory communication is made, the proceeding must be " 'contemplated in good faith and under serious consideration.' "[13] Within these limits, courts should apply the

---

[5]99 Nev. at 60, 657 P.2d at 104.

[6]*Bull v. McCuskey*, 96 Nev. 706, 712, 615 P.2d 957, 961 (1980), *abrogated on other grounds by Ace Truck v. Kahn*, 103 Nev. 503, 746 P.2d 132 (1987).

[7]*Circus Circus Hotels*, 99 Nev. at 60, 657 P.2d at 104.

In *K-Mart Corporation v. Washington*, this court commented that the absolute privilege would render certain allegedly defamatory statements nonactionable "if" the statements were "made in good faith." 109 Nev. 1180, 1191, 866 P.2d 274, 282 (1993). This is an incorrect statement of the law. As this court stated in *Circus Circus Hotels*, the absolute privilege provides unconditional immunity, even for statements made with "personal ill will." 99 Nev. at 60, 657 P.2d at 104; *accord* 2 Rodney A. Smolla, *Law of Defamation* § 8:2, at 8-3 (2d ed. 2002) ("In a true absolute privilege situation, liability is totally foreclosed without regard to the fault or mental state of the defendant.").

[8]*Circus Circus Hotels*, 99 Nev. at 62, 657 P.2d at 105 ("Absolute privilege and relevance are questions of law for the court to decide."); *see also* 2 Smolla, *supra* note 7, § 8:18.

[9]*Restatement (Second) of Torts* § 586 cmt. c (1977).

[10]*Circus Circus Hotels*, 99 Nev. at 60, 657 P.2d at 104.

[11]*Bull*, 96 Nev. at 712, 615 P.2d at 961.

[12]2 Smolla, *supra* note 7, § 8:16.

[13]*K-Mart Corporation*, 109 Nev. at 1191 n.7, 866 P.2d at 282 n.7 (quoting *Restatement (Second) of Torts* § 587 cmt. e); *accord Restatement (Second) of Torts* § 586 cmt. e.

absolute privilege liberally, resolving any doubt "in favor of its relevancy or pertinency."[14]

Fink contends that Oshins' statements to Denise provided the impetus for her to begin considering removing Fink as independent trustee and, therefore, Oshins' statements fall beyond the scope of the absolute privilege. In the context of the applicable law, the question before the district court was whether Oshins' statements to Denise were made after Denise began "serious consideration" of undertaking proceedings to remove Fink. We conclude that the district court's decision to apply the privilege under these circumstances was correct. In particular, we note that Denise stated that she "began losing faith" in Fink shortly after her husband's funeral when Fink informed her that as trustees, they "could draw as much or as little in fees from the trust" as they wished. This conversation, which, according to the record, took place before Oshins' conversation with Denise that provided the basis for Fink's defamation claim, gave the district court sufficient ground to conclude that Denise had begun serious consideration of the proceedings necessary to remove Fink well before Oshins spoke with her. Fink argues that the uncertainty regarding Denise's subjective state of mind, namely, precisely when she decided to remove him, created a fact question for the jury. We disagree—the absolute privilege is for the court to apply.[15] In reaching its decision, the district court simply resolved any doubt in favor of a broad application of the absolute privilege, just as it should have.

Fink next contends that Oshins cannot claim absolute privilege because Denise republished the statement in her affidavit, a court document that was available to the public. The argument is premised on the assumption that the defamatory communication must not be published beyond the sphere of attorney/client communications, or else the absolute privilege will be deemed waived. But this is incorrect. The fact that the defamatory statements are published beyond the attorney/client relationship has no bearing on the attorney's ability to assert the absolute privilege to

---

[14]*Club Valencia Homeowners v. Valencia Assoc.*, 712 P.2d 1024, 1027 (Colo. Ct. App. 1985) ("No strained or close construction will be indulged to exempt a case from the protection of privilege."); *accord Chard v. Galton*, 559 P.2d 1280, 1282 (Or. 1977) (noting that the absolute privilege should apply liberally).

[15]*See Circus Circus Hotels*, 99 Nev. at 62, 657 P.2d at 105.

defamation.[16] It appears that Fink has simply confused two basic legal doctrines, the evidentiary privilege protecting the confidential communications between clients and their attorneys, a privilege that the client holds and can waive through publication,[17] and the "privilege" shield of defamation law, a defense that is not waived through publication.

Fink also argues that Oshins was not, in fact, representing Denise, but rather Oshins was really representing Fink in his capacity as independent trustee. Fink does not explain the objective of this argument. But insofar as he raises it to counter what he perceived to be the district court's application of the attorney-client privilege, we again point out his confusion between the evidentiary privilege and the defamation defense. And insofar as Fink advances the argument to defeat the district court's application of the defamation defense altogether, we reject it. In order to claim the absolute privilege, the attorney must indeed have been involved in the anticipated or actual judicial proceeding.[18] But we conclude that the district court properly applied the absolute privilege here because Oshins, acting in his role as the trust attorney, represented Denise in her capacity as the family trustee and primary beneficiary, at least to a degree sufficient to bring him within the scope of the absolute privilege under the circumstances presented here. In particular, the record demonstrates that Oshins played a role in Fink's removal as the independent trustee, even though another attorney was later brought in to effectuate the removal.[19]

### Oshins' statements to Dr. Richard Lewin

Fink also challenges the district court's grant of summary judgment insofar as it precluded him from asserting a claim that

---

[16]The absolute privilege protects attorneys' statements made "in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding." *Restatement (Second) of Torts* § 586. By their very nature, these activities require communications beyond the attorney/client relationship. Indeed, the initiatory and actual judicial proceedings themselves are usually matters open to the public.

[17]*See* NRS 49.095 (stating the general rule that a client may refuse to disclose confidential communications between himself and his lawyer); *Cheyenne Construction v. Hozz*, 102 Nev. 308, 311-12, 720 P.2d 1224, 1226 (1986) ("If there is disclosure of privileged communications, this waives the remainder of the privileged consultation on the same subject.").

[18]*See* 2 Smolla, *supra* note 7, § 8:8.

[19]Fink's argument that Oshins had a conflict of interest and his argument regarding the retainer-fee check are of no consequence.

Oshins defamed him in conversations with Dr. Richard Lewin. Fink alleges that Oshins defamed him during various meetings between Oshins and Dr. Lewin as they were discussing matters pertaining to Dr. Lewin's own trust. The conversations took place at various times over the course of the summer and fall of 1996. Oshins is alleged to have made comments to Dr. Lewin regarding Fink's past drug-abuse problems as well as his actions involving the St. James trust. Dr. Lewin stated that Oshins' comments "led [him] to believe that Mr. Oshins felt that perhaps Mr. Fink was not very honest in some of his dealings with Timothy St. James." For instance, during one of their conversations, Oshins purportedly told Dr. Lewin, "Don [Fink] is interfering with Denise getting her funds." Dr. Lewin also believed that Oshins called Fink a "thief," but he was not sure whether that was actually stated or simply implied by the conversation.

The district court concluded that these statements were covered by the absolute privilege. Illuminating its reasoning, the district court explained, "[A]s to Dr. Lewin, we would be hard pressed to conduct the day-to-day business affairs that attorneys conduct if I would rule otherwise." Oshins raises various arguments defending the district court's determination.

Oshins first contends that the district court properly applied the absolute privilege in his favor. An attorney's statements to someone who is not directly involved with the actual or anticipated judicial proceeding will be covered by the absolute privilege only if the recipient of the communication is "significantly interested" in the proceeding.[20] Attempting to bring Dr. Lewin within this parameter, Oshins explains that he discussed Denise's dispute with Dr. Lewin so that Dr. Lewin, as Denise's counselor, family doctor, and distant relative,[21] would be able to help her cope with the stress caused by her dispute with Fink. Additionally, Oshins asserts that he was advising Dr. Lewin, as his client, to avoid Fink because Dr. Lewin was considering involving Fink in the insurance elements of his own trust. But we conclude that even a liberal application does not bring Oshins' statements to Dr. Lewin within the scope of the absolute privilege. Although Oshins may have indeed acted out of concern for Denise's psychological well-being or Dr. Lewin's financial matters, it is quite evident that Dr. Lewin played no significant role and had no significant interest in Denise's efforts to remove Fink as the independent trustee. Thus, Oshins' statements to Dr. Lewin will be protected, if at all, by a

---

[20]*Andrews v. Elliot*, 426 S.E.2d 430, 433 (N.C. Ct. App. 1993).

[21]Dr. Lewin's stepson was formerly married to Dr. St. James's sister.

conditional privilege,[22] a defense that may develop further on remand.[23]

Oshins also asserts that his statements regarding Fink's drug abuse and interference with the St. James trust were true and therefore non-actionable. We have previously stated, however, that "the truth or falsity of an allegedly defamatory statement is an issue of fact properly left to the jury for resolution."[24] In a similar vein, Oshins argues that, due to Dr. Lewin's uncertainty as to whether Oshins called Fink a thief, a fact finder would have to "speculate" as to whether the statement was actually made. This argument is unavailing, however, because even assuming Dr. Lewin merely inferred that Oshins was calling Fink a thief from the context of their conversations, that may be enough to establish defamation.[25]

## CONCLUSION

In summary, we conclude that the district court correctly granted summary judgment to Oshins on Fink's defamation claim that stemmed from Oshins' statements to Denise St. James. But as to Oshins' statements to Dr. Richard Lewin, we conclude that the district court incorrectly applied the absolute privilege. Accordingly, we affirm the district court's order granting summary judgment in part, we reverse in part, and we remand this case to the district court.

---

[22]See *Circus Circus Hotels*, 99 Nev. at 62, 657 P.2d at 105 ("A qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty.").

[23]Oshins invites us to apply the conditional privilege in his favor. We decline to do so, however, because the district court has not yet determined whether the privilege applies or whether Fink can demonstrate sufficient evidence of Oshins having abused the privilege to send the question to a jury. *See id.* (setting forth the burden-shifting approach used in applying the conditional privilege and the standard for establishing abuse of the privilege).

[24]*Posadas v. City of Reno*, 109 Nev. 448, 453, 851 P.2d 438, 442 (1993).

[25]See *Ornatek v. Nevada State Bank*, 93 Nev. 17, 20, 558 P.2d 1145, 1147 (1977) (noting that a statement may convey a defamatory meaning when viewed in light of the "extrinsic circumstances," even though "the defamation does not appear from the words themselves").