**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CROCKETT & MYERS, LTD.; J. R.
CROCKETT, Jr.,
  *Plaintiffs-counter-defendants-*
                    *Appellees,*

  v.

NAPIER, FITZGERALD & KIRBY, LLP;
BRIAN P. FITZGERALD,
  *Defendants-counter-claimants-*
                  *Appellants.*

No. 07-16191

D.C. No.
CV-05-00877-PMP-
GWF

CROCKETT & MYERS, LTD.; J. R.
CROCKETT, Jr.,
  *Plaintiffs-counter-defendants-*
                  *Appellants,*

  v.

NAPIER, FITZGERALD & KIRBY, LLP;
BRIAN P. FITZGERALD,
  *Defendants-counter-claimants-*
                  *Appellees.*

No. 07-16534

D.C. No.
CV-05-00877-PMP-
GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted April 16, 2009
Submission Withdrawn April 27, 2009
San Francisco, California

Filed October 21, 2009

14157

Before: Dorothy W. Nelson, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge D.W. Nelson

## COUNSEL

Mark A. Hutchison, Scott A. Flinders and Michael K. Wall (argued), Hutchison & Steffen, LLC, Las Vegas, Nevada, for the plaintiffs-counter-defendants-appellants-cross-appellees.

Joice B. Bass, Lewis & Roca, LLP, Las Vegas, Nevada, and Samuel S. Lionel (argued), Lionel Sawyer & Collins, Las Vegas, Nevada, for the defendants-counter-claimants-appellees-cross-appellants.

## OPINION

D.W. NELSON, Senior Circuit Judge:

Napier, Fitzgerald & Kirby, LLP and Brian Fitzgerald (collectively "Fitzgerald") appeal the district court's dismissal of their Second Amended Counterclaim ("SAC"). They also appeal the district court's award of quantum meruit compensation subsequent to a bench trial. Crockett & Myers, Ltd. and J.R. Crockett, Jr. ("Crockett") cross-appeal the district court's denial of its posttrial motion for attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we (1) affirm the dismissal of Fitzgerald's SAC; (2) affirm the denial of Crockett's motion for fees; and (3) vacate the district court's award of quantum meruit compensation and remand for recalculation.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1]Because these appeals are from both an order granting dismissal and a judgment after a bench trial, the factual and procedural background is

On or about June 8, 2001, Wendy Nostro retained Brian Fitzgerald, a New York lawyer known to her family, to investigate whether the death of her husband in Nevada was due to potential medical malpractice. Soon after, Fitzgerald contacted a Nevada attorney, J.R. Crockett of Crockett & Myers, Ltd. Crockett and Fitzgerald orally agreed that they would serve as co-counsel to Nostro and that Fitzgerald would receive 50% of the attorneys' fees for his referral (the "Referral Agreement"). Fitzgerald also convinced Crockett to reduce his usual contingency fee from 40% to 33.33%.

Crockett, Fitzgerald, and Nostro subsequently entered into a written Attorney Retainer Agreement (the "Retainer Agreement"). Pursuant to the Retainer Agreement, which was attached to the SAC, the attorneys' fees were to be divided equally between Crockett and Fitzgerald. The Retainer Agreement further provided that:

> [a]ll matters of policy, including but not limited to preparation and presentation of this claim, litigation, costs, possible settlement, trial and/or appeal, if the same shall arise, shall be determined jointly by the CLIENT and ATTORNEYS as reasonable as possible within the professional discretion of ATTORNEYS and within the Canons of Ethics[,]

and that:

> [t]he CLIENT will be responsible for all costs advanced by the ATTORNEYS in presentation of the aforementioned claim or action. . . . It is further agreed and understood that the costs advanced dur-

---

extensive. For issues related to the motion to dismiss, the facts are taken from Fitzgerald's SAC and related pleadings. For issues related to the bench trial, the facts are derived from the evidence adduced during discovery and at trial, to the extent that they are relevant and differ from the SAC.

ing the course of said claim will be paid for equally
by CROCKETT & MYERS and BRIAN FITZGER-
ALD, ESQ.

Both attorneys continued to represent Nostro. At some
point, Fitzgerald contacted Nostro and requested that she pay
her share of the court costs. Nostro contacted Crockett, who
advised her that "it was their policy not to go after a client for
court costs" and that "she could fire Mr. Fitzgerald." Fitzger-
ald was not included in this conversation. On June 27, 2003,
Nostro discharged Fitzgerald.

In October 2004, Crockett informed Fitzgerald that a settle-
ment had been reached in Nostro's suit. Crockett did not for-
ward 50% of the attorneys' fees. After a failed attempt at
mediation, Crockett filed for relief in Nevada state court,
requesting a judgment that Fitzgerald was only entitled to
recovery in quantum meruit. The state action was then
removed to federal court on the grounds of diversity of the
parties.

Fitzgerald filed the SAC, alleging, *inter alia*: (1) breach of
the oral Referral Agreement; (2) breach of the written
Retainer Agreement; (3) breach of the implied covenant of
good faith and fair dealing; (4) breach of the duty of loyalty
and as a fiduciary by reason of joint venture; and (5) breach
of fiduciary duties by reason of joint representation.

On June 12, 2006, Crockett offered Fitzgerald $35,000 to
settle the case. Fitzgerald rejected the offer. Over a month
later, in an opinion published at 440 F. Supp. 2d 1184 (D.
Nev. 2006), the district court dismissed with prejudice all of
the relevant SAC counterclaims.

In May 2007, the parties proceeded to a bench trial on
Crockett's claim that Fitzgerald was only entitled to quantum
meruit recovery. At trial, the evidence showed that Fitzgerald
contributed 17.2 hours to Nostro's case before his discharge,

for a total of $4,300 at his rate of $250/hour. His staff contributed varying numbers of hours at different rates that equated to an additional $2,909. Fitzgerald also admitted that the Referral Agreement was not distinct from the Retainer Agreement; according to his testimony, there was "only one agreement."

On May 22, 2007, the district court awarded Fitzgerald compensation in quantum meruit. Although the district court noted that the majority of Fitzgerald's services were roughly quantifiable, it acknowledged that compensation at an hourly rate did not reasonably represent the value of his services. The court noted that Fitzgerald focused on the importance of securing the proper person to represent Nostro, and that he was successful in convincing Crockett to reduce his contingency fee, resulting in benefit to Nostro of an additional $100,000 of the settlement proceeds. The court concluded that one-third of the $100,000 additional settlement was a reasonable sum, and awarded Fitzgerald $33,333.33.

On June 4, 2007, Crockett moved for $90,859.12 in attorneys' fees and $4,934.21 in costs. The district court entered an order denying Crockett's request for attorneys' fees but granting him costs.

Fitzgerald now appeals the dismissal of his claims on the pleadings as well as the district court's award of quantum meruit compensation. Crockett cross-appeals the district court's denial of attorneys' fees.

## STANDARD OF REVIEW

This court reviews de novo a district court's dismissal of claims pursuant to Fed. R. Civ. P. 12(b)(6). *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmovant. *Id.* We review a district court's findings of fact following a bench

trial for clear error, and its conclusions of law de novo. *Jarvis v. K2, Inc.*, 486 F.3d 526, 529 (9th Cir. 2007). A district court's denial of attorneys' fees is reviewed for abuse of discretion. *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1020 (9th Cir. 2003).

## *DISCUSSION*

## I. DISMISSAL OF THE SECOND AMENDED COUNTERCLAIM

### A. *Implied Covenant and Fiduciary Duty Claims*

**[1]** Fitzgerald's claims of breach of the implied covenant of good faith and fair dealing (count four) and fiduciary duty (counts five and seven) are based upon Crockett's conversation with Nostro in which he advised her that she could fire Fitzgerald. Because Nevada recognizes "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged," Crockett argues that these claims fail because his conversation with Nostro was privileged. *See Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002) (internal quotation marks omitted). "[T]he privilege applies not only to communications made during actual judicial proceedings, but also to 'communications preliminary to a proposed judicial proceeding.' " *Id.* at 644 (quoting *Bull v. McCuskey*, 615 P.2d 957, 961 (Nev. 1980)). "The . . . communication need not be strictly relevant to any issue involved in the proposed or pending litigation, it only need be in some way pertinent to the subject of controversy." *Id.* (internal quotations marks omitted).

**[2]** Because the conversation consisted of legal advice as to what Nostro could do regarding Fitzgerald's request for costs, we conclude that it falls within the parameters of the privilege. We reject Fitzgerald's argument that Crockett was not acting within his role as Nostro's attorney; as her lawyer, he

had a duty to communicate with her, respond to her questions, and inform her of her legal options.

Fitzgerald points out that Nevada has never applied the privilege to bar these types of claims. Because Nevada has not addressed this particular issue, we use our best judgment to predict how the Nevada Supreme Court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996) (internal quotation marks omitted).

We are persuaded that the Nevada courts would apply the privilege to the communication at issue. First, privileging Crockett's legal advice advances the Nevada policy of granting "officers of the court the utmost freedom in their efforts to obtain justice for their clients." *Fink*, 49 P.3d at 643 (internal quotation marks omitted). We agree with the district court that it is in the public interest that attorneys speak freely with their clients, even if attorneys occasionally abuse the privilege. Second, Nevada courts have indicated that the scope of the privilege is "quite broad," and that it should be applied "liberally." *Id.* at 644; *see also Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, ___ P.3d ___, 2009 WL 2414820 (Nev. Aug. 6, 2009) (extending the absolute privilege to defamatory communications made by nonlawyers in anticipation of a judicial proceeding). Finally, "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Mort v. United States*, 86 F.3d 890, 893 (9th Cir. 1997). California law supports applying the privilege here. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 594-95 (Cal. 1990) (privilege applies to any action except one for malicious prosecution).

[3] Because the communication was privileged, we affirm the dismissal of these claims.

B.   *Breach of the Written Retainer Agreement*

Next, Fitzgerald alleges that Crockett violated the Retainer Agreement by failing to include Fitzgerald in the discussion with Nostro regarding costs.

**[4]** To determine whether the contract was breached, we must turn to the language of the Retainer Agreement, which was incorporated into the SAC. *See Sandy Valley Assocs. v. Sky Ranch Estate Owners Ass'n*, 35 P.3d 964, 967 (Nev. 2001) (per curiam), *receded from on different grounds by Horgan v. Felton*, 170 P.3d 982, 988 (Nev. 2007) ("When a contract is clear on its face, it will be construed from the written language and enforced as written."). Although the Retainer Agreement required the attorneys to jointly "determine" costs, it did not require that any and all *communications* with the client regarding costs include both attorneys. There is no specific provision requiring joint communications, nor can the explicit language be interpreted to so require.

**[5]** Fitzgerald's own behavior confirms our reading of the Retainer Agreement and what the parties understood it to require. The SAC alleges that Nostro called Crockett because Fitzgerald had earlier "request[ed] that Mrs. Nostro pay her share of the costs." Fitzgerald did not include Crockett on this earlier call, thus violating Fitzgerald's own interpretation of the Retainer Agreement. Accordingly, we affirm the dismissal of this claim.

C.   *Breach of the Oral Referral Agreement*

Finally, Fitzgerald argues that the district court erred in dismissing his claim for breach of the oral Referral Agreement. In the SAC, Fitzgerald alleged that he and Crockett "entered into a[n] oral contract" whereby Crockett agreed to give Fitzgerald 50% of the attorneys' fees for referring the case. Fitzgerald argues that Crockett breached the agreement by failing to forward him his share of the fees.

Resolution of this claim requires us to examine closely alternative theories of contractual liability. In his brief, Fitzgerald argues that the written Retainer Agreement was consistent with the oral Referral Agreement and that the parol evidence rule does not bar him from introducing the latter to explain ambiguities in the former. Although we agree with the general principle that "parol evidence is admissible in order to resolve ambiguities in a written instrument," *Lowden Inv. Co. v. Gen. Elec. Credit Co.*, 741 P.2d 806, 809 (Nev. 1987), we disagree with the parties' contention that the rule is applicable here. Fitzgerald's reference to the oral Referral Agreement in the SAC was not made to supplement or explain the written Retainer Agreement. Instead, Fitzgerald alleged that Crockett breached a *separate and independent oral* contract. To the extent that Fitzgerald now claims that the written contract also embodied a provision calling for the equal division of fees on account of the referral, that argument fails because he did not allege a breach of the *written* Retainer Agreement on those grounds in the SAC; he alleged only a breach of the *oral* contract. We therefore need not determine whether the written Retainer Agreement was, in fact, ambiguous.

**[6]** To the extent that Fitzgerald alleges that Crockett breached a separate and independent oral contract, this claim must also fail because Fitzgerald has waived it. In his brief, Fitzgerald conceded that he "saw the Retainer Agreement as confirming the oral referral fee" and that "the oral referral fee agreement was embodied in the written Retainer Agreement." *See Hilao v. Estate of Marcos*, 393 F.3d 987, 993 (9th Cir. 2004) ("A party . . . is bound by concessions made in its brief."). Fitzgerald himself agrees that the oral agreement was not a separate contract. Because he now admits that there was no separate contract, this claim fails on its face.

## II.   AWARD OF QUANTUM MERUIT COMPENSATION

Fitzgerald also appeals the district court's award of quantum meruit compensation. We find that the district court

clearly erred in failing to account for the value of the referral to Crockett.

**[7]** "The basis of recovery on quantum meruit . . . is that a party has received from another a benefit which is unjust for him to retain without paying for it." *Thompson v. Herrmann*, 530 P.2d 1183, 1186 (Nev. 1975). Accordingly, "the proper measure of damages under a *quantum meruit* theory of recovery is the reasonable value of the services." *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d 69, 71 (Nev. 1994) (internal quotation marks and alteration omitted).

**[8]** We reject Fitzgerald's argument that he was entitled to 50% of the fees as contemplated by the Retainer Agreement. Although a court may consider the contract price, the originally agreed upon fee "cannot be held to be the controlling or dominant consideration" in an action under quantum meruit. *Gordon v. Stewart*, 324 P.2d 234, 236 (Nev. 1958). "Quantum meruit contemplates that the true reasonable value is to be substituted for the agreed terms." *Id.* Because Fitzgerald was terminated over a year before the case ultimately settled, the district court properly departed from the original contract price.

**[9]** Although the district court recognized that Nostro benefitted from Fitzgerald's careful selection of a local attorney well-versed in Nevada medical malpractice law, it failed to account for the value, in and of itself, of the referral. Instead, it focused solely on the value of the reduced contingency fee, calculating the fee as a percentage of the fee savings. We agree that the reduction conferred a benefit upon Nostro. The district court, however, erred in failing to account for the "reasonable value" to Crockett of the referral itself, apart from the fee reduction. Accordingly, we vacate the lower court's order and remand for a recalculation of the award. We further note that a court may also consider "established customs" when calculating an award under quantum meruit. *See, e.g., Asphalt*

*Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (per curiam); *Flamingo*, 879 P.2d at 71.

## III.   DENIAL OF CROCKETT'S ATTORNEYS' FEES

**[10]** Under Nevada law, "a defendant shall be awarded reasonable attorneys' fees incurred from the time of an offer of judgment if the plaintiff rejects it and fails to receive a more favorable result." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999). Because Fitzgerald rejected Crockett's offer of judgment and ultimately recovered less than was offered, Crockett moved for both fees and costs.

**[11]** The quantum meruit award of attorneys' fees, however, is discretionary. *See* Nev. Rev. Stat. § 17.115(4)(d)(3); Nev. R. Civ. P. 68(f)(2); *Chavez v. Sievers*, 43 P.3d 1022, 1027 (Nev. 2002). The Nevada Supreme Court has held that:

> In exercising its discretion regarding the allowance of fees and costs under NRCP 68, the trial court must carefully evaluate the following factors: (1) whether the plaintiff's claim was brought in good faith; (2) whether the defendants' offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount.

*Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983) (internal citations omitted).

**[12]** Crockett argues that the district court abused its discretion when it denied his request for fees. The record, however, reflects that the district court considered the four *Beattie* factors. Given the complexity of the claims, the novelty of the

legal questions presented, and the amount requested, we are not left with a "definite and firm conviction that a mistake has been committed." *SEC v. Rubera*, 350 F.3d 1084, 1093 (9th Cir. 2003) (internal quotation marks omitted).

## *CONCLUSION*

For the foregoing reasons, we AFFIRM (1) the dismissal of the second amended counterclaim and (2) the district court's order denying attorneys' fees to Crockett. Because we find that the district court did not properly account for the value of the referral, we VACATE the award and REMAND for recalculation. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**.