# IN THE SUPREME COURT OF THE STATE OF NEVADA

HOWARD SHAPIRO; AND JENNA
SHAPIRO,
Appellants,
vs.
GLEN WELT; RHODA WELT; LYNN
WELT; AND MICHELLE WELT,
INDIVIDUALS,
Respondents.

No. 73943

FILED

DEC 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court order granting a special motion to dismiss in a tort action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

Appellants Howard and Jenna Shapiro filed a complaint in the district court against respondents Glen, Rhoda, Lynn, and Michelle Welt alleging defamation per se, defamation, extortion, civil conspiracy, fraud, and punitive damages. A website respondents published concerning appellants and Howard's conservatorship of his father, Walter, prompted appellants to sue. Respondents filed a motion to dismiss pursuant to Nevada's anti-SLAPP statutes, which the district court granted. Appellants appealed, and in *Shapiro v. Welt* (*Shapiro I*), 133 Nev., Adv. Op. 6, 389 P.3d 262 (2017), this court agreed with appellants that the district court erred in granting respondents' special motion to dismiss due to an improper analysis of whether the conservatorship matter was an issue of public interest under NRS 41.637(4). *Shapiro I*, 133 Nev., Adv. Op. 6, 389 P.3d at 267. This court further agreed with appellants that the district court erred in its application of the absolute litigation privilege test articulated in *Jacobs v. Adelson*, 130 Nev. 408, 325 P.3d 1282 (2014). *Id.*, 389 P.3d at 268.

First, in determining what constitutes "an issue of public interest" under Nevada's anti-SLAPP statutes, this court looked to California and adopted its guiding principles in *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957 (N.D. Cal. 2013). *Id.*, 389 P.3d at 268. Because the district court did not apply *Piping Rock Partners'* guiding principles in analyzing respondents' statements, this court reversed the district court's order and remanded with instruction "to apply California's guiding principles in analyzing whether [respondents'] statements were made in direct connection with an issue of public interest under NRS 41.637(4)." *Id.*, 389 P.3d at 268.

Second, in recognizing our decision in *Jacobs*, this court noted that the absolute litigation privilege will not apply when a party's statement is to someone not directly involved with the judicial proceeding, unless "the recipient of the communication is significantly interested in the proceeding." *Id.*, 389 P.3d at 269 (quoting *Fink v. Oshins*, 118 Nev. 428, 436, 49 P.3d 640, 645-46 (2002)). This court explained that, pursuant to *Jacobs*, "[i]n order to determine whether a person who is not directly involved in the judicial proceeding may still be 'significantly interested in the proceeding,' the district court must review 'the recipient's legal relationship to the litigation, not their interest as an observer.'" *Id.*, 389 P.3d at 269. Because the district court failed to conduct *Jacobs'* "case-specific, fact-intensive inquiry that [focuses] on and balance[s] the underlying principles of the privilege," this court reversed the district court's order and remanded. *Id.*, 389 P.3d at 269.

On remand, respondents renewed their special motion to dismiss appellants' complaint pursuant to Nevada's anti-SLAPP statutes. Despite appellants' request for the district court to conduct the analysis this court instructed in *Shapiro I,* the district court tasked respondents with

determining the findings of fact and conclusions of law based on the pleadings and papers filed. Thus, the district court entered an order echoing respondents' renewed motion to dismiss.

Pursuant to its order, the district court first relied on California law to conclude that NRS 41.637(3) applied to the speech on respondents' website. The district court explained that NRS 41.637(3) applied because respondents created the website after the conservatorship proceeding commenced in New Jersey, and the speech on the website was directly connected to the issue before the New Jersey court, namely, whether Howard was qualified and suitable to be Walter's conservator.

Second, the district court concluded that NRS 41.637(4) also applied to the speech on respondents' website. The district court acknowledged this court's adoption of California's guiding principles in *Piping Rock Partners*, but stated that the case "provided limited guidance as to what speech concerned an issue of public interest." The district court instead relied on *Young v. CBS Broadcasting, Inc.*, 151 Cal. Rptr. 3d 237 (Ct. App. 2012), to conclude that "[i]nvoking sovereign powers as a conservator is an issue of public interest," as conservators are public officials subject to public scrutiny. Even "if applying for a court appointment as a conservator is not a significant public interest on its own," the district court alternatively held that respondents' speech still met "various standards used in California courts to determine if speech concerns an issue of public interest." After applying other California tests to determine whether respondents' website concerned an issue of public

(O) 1947A

interest, the district court analyzed the five guiding principles set forth in *Piping Rock Partners*:[1]

> First, as *Young* described, the sovereign powers a conservator exercises are not a mere curiosity. A conservator uses those powers to take involuntary control over another person's life. *Young's* description of a conservator's power also satisfies [*Piping Rock Partners*'] second factor that the issue "should be something of concern to a substantial number of people . . . ." Third, there is a close relationship between the public interest in the qualifications and suitability of conservators and [respondents'] speech addressing Howard's own qualifications and suitability. Fourth, [respondents'] speech is directed at the public interest by discussing Howard's qualifications and suitability and searching for information on that topic so as to provide it to the New Jersey court that considered Howard's petition. Fifth, and finally, Howard put his qualifications and suitability to be a conservator in dispute by petitioning the New Jersey court. [Respondents] then spoke on that topic.

(Internal footnote omitted). Thus, the district court concluded that NRS 41.637(4) protected respondents' speech on its website "because Howard's qualifications and suitability to be Walter's conservator are very much issues of public concern."

After recognizing that respondents met their initial burden of showing by a preponderance of the evidence that appellants' claims were based on a good faith communication in furtherance of the right to free speech in direct connection with an issue of public concern, the district court next determined that appellants failed to meet their burden of establishing

---

[1]The district court referred to *Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385 (Ct. App. 2003), which *Piping Rock Partners* cited to in identifying the five guiding principles. *See Piping Rock Partners*, 946 F. Supp. 2d at 968.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

by clear and convincing evidence the probability of prevailing on their claims. In particular, the district court concluded that there was no probability of success for Howard's defamation claims because (1) the absolute litigation privilege applied to protect respondents' speech, and (2) Howard was a limited-purpose public figure and a public official who failed to show actual malice. With regard to the absolute litigation privilege, the district court relied on *Clark County School District v. Virtual Education Software, Inc.*, 125 Nev. 374, 213 P.3d 496 (2009), to conclude that because the absolute litigation privilege protects a party's defamatory statements made during, or in anticipation of, judicial proceedings, respondents' website seeking potential witnesses and evidence relevant to Howard's qualifications and suitability as conservator was absolutely privileged. Although the district court acknowledged *Jacobs*, the district court only recognized that *Jacobs* prohibited "communications made to the media in an extrajudicial setting" from being absolutely privileged. Thus, the district court distinguished *Jacobs* from this case by recognizing that respondents' website did not involve statements to media sources. Ultimately, the district court granted respondents' special motion to dismiss, and awarded respondents discretionary relief pursuant to NRS 41.670(b).[2] This appeal followed.

In reviewing a district court's order granting a special motion to dismiss, "this court will provide greater deference to the lower court's findings of fact and therefore will review for an abuse of discretion." *Shapiro I*, 133 Nev., Adv. Op. 6, 389 P.3d at 266. However, this court

---

[2]The district court mistakenly cited to NRS 41.660(b) in awarding respondents discretionary relief. The district court awarded each respondent $10,000 from Howard, in addition to $10,000 from Jenna. The district court also directed respondents to submit a memorandum of attorney fees and costs with appropriate supporting documentation.

reviews a district court's conclusions of law de novo. *Cty. of Clark v. Sun State Props., Ltd.*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003).

Appellants argue that respondents' speech is not protected because (1) the speech does not concern an issue of public interest under NRS 41.637(4), and (2) the speech is not protected by the absolute litigation privilege. However, before addressing appellants' two contentions, respondents recognized that the district court concluded that they met their initial burden under NRS 41.637(4) *and* NRS 41.637(3). Therefore, we review the district court's conclusions under both subsections of NRS 41.637.

*The district court erred in concluding that respondents' statements are protected under NRS 41.637(3)*

When analyzing whether a defendant satisfied his initial burden under NRS 41.637(3) in a special motion to dismiss, the district court must determine whether a written or oral statement is *"made in direct connection with* an issue under consideration by a . . . judicial body." NRS 41.637(3) (emphasis added). California has addressed this issue under its state anti-SLAPP statute, which protects "any written or oral statement or writing *made in connection with* an issue under consideration or review by a . . . judicial body." Cal. Civ. Proc. Code § 425.16(e)(2) (2016) (emphasis added). California courts have construed its anti-SLAPP statute broadly "to protect the right of litigants to the utmost freedom of access to the courts without the fear of being harassed subsequently by derivative tort actions." *Contemporary Servs. Corp. v. Staff Pro Inc.*, 61 Cal. Rptr. 3d 434, 445 (Ct. App. 2007) (internal quotation marks omitted). California courts recognize that "a statement is 'in connection with' litigation under [California's anti-SLAPP statute] if it relates to the substantive issues in the litigation *and* is directed to persons having some interest in the litigation." *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 391 (Ct. App. 2008) (emphasis added).

 

Therefore, for a statement to fall within the scope of NRS 41.637(3) as a statement "made in direct connection with an issue under consideration by a . . . judicial body," it must (1) relate to the substantive issues in the litigation *and* (2) be directed to persons having some interest in the litigation.

Here, the district court only made specific findings for the first prong, despite acknowledging *Neville*'s second requirement that the statement be directed to persons having some interest in the litigation. Although respondents directed their speech on the website to unidentified victims and potential witnesses, it is unclear how these persons have an interest in the conservatorship proceeding. Because the district court did not make any specific findings regarding whether respondents' statements were directed to persons having some interest in the litigation, we reverse and remand this issue.

*The district court erred in concluding that respondents' statements are protected under NRS 41.637(4)*

Although the district court applied the five guiding principles set forth in *Piping Rock Partners*, its findings were conclusory and it relied on distinguishable case law in its analysis. In particular, the district court relied on *Young v. CBS Broadcasting, Inc.*, 151 Cal. Rptr. 3d 237 (Ct. App. 2012), which only addressed whether the plaintiff introduced sufficient evidence to show a probability of prevailing on the claim. 151 Cal. Rptr. 3d at 242. Whereas here, the issue is whether respondents met their initial burden by showing that the claim was based on a good faith communication in furtherance of the right to free speech in direct connection with an issue of public concern. Moreover, *Young* stands for the proposition that a conservator with approximately 100 clients is a public official, *see id.* at 245, which is not analogous to this case. Accordingly, it does not follow that petitioning a court to be appointed as conservator for one's father renders

the qualifications and suitability of the petitioner a matter of public interest. Therefore, because we conclude that the district court abused its discretion in relying on *Young* to analyze the five guiding principles, and thus erred in concluding that respondents' statements are protected under NRS 41.637(4), we reverse and remand.

On remand, the district court must analyze *Piping Rock Partners'* guiding principles to determine whether Howard's petition for conservatorship of his father is a matter of public interest. Specifically, the district court must determine whether Howard's conservatorship (1) "equate[s] with mere curiosity," (2) is "of concern to a substantial number of people," (3) has "some degree of closeness [with] the challenged statements," and (4) is "the focus of the speaker's conduct . . . rather than a mere effort to gather ammunition for another round of private controversy." *Shapiro I,* 133 Nev., Adv. Op. 6, 389 P.3d at 268. As the fifth and final guiding principle under *Piping Rock Partners,* the district court must consider whether respondents' statements on the website were simply private information communicated to a large audience. *Id.,* 389 P.3d at 268.

*The district court erred in concluding that respondents' statements are protected by the absolute litigation privilege*

In determining whether the absolute litigation privilege applies, the district court failed to recognize that "[a] nonparty recipient must have a relevant interest in, or a connection to, the outcome of the proceeding," as this court enunciated in *Jacobs.* 130 Nev. at 416, 325 P.3d at 1287. Thus, it remains unclear how any of the victims or potential witnesses that respondents' website encouraged to appear in court actually have a relevant interest in the outcome of Howard's appointment as his father's conservator. Therefore, we conclude that the district court erred in concluding that respondents' statements are absolutely privileged, and reverse and remand for the district court to apply the fact-intensive inquiry

 

required by *Jacobs. See id.* ("[T]he nature of the recipient's interest in or connection to the litigation is a case-specific, fact-intensive inquiry that must focus on and balance the underlying principles of the privilege." (Internal quotation marks omitted)). Based on the foregoing, we

ORDER the judgment of the district court REVERSED, VACATE the district court's award of discretionary relief, AND REMAND this matter to the district court to (1) make specific findings regarding whether respondents' statements were directed to persons having some interest in the litigation to determine if respondents' statements are protected under NRS 41.637(3), and (2) analyze *Piping Rock Partners'* five guiding principles, as set forth above, to determine whether respondents' statements are protected under NRS 41.637(4).

If respondents meet their initial burden on remand, the district court must then determine whether the victims or potential witnesses that respondents' website encouraged to appear in court actually have a relevant interest in the *outcome* of Howard's conservatorship proceeding, as we enunciated in *Jacobs.*

_____, J.
Cherry

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Nancy L. Allf, District Judge
Alex B. Ghibaudo, PC.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP/Las Vegas
Eighth District Court Clerk