CLARK COUNTY SCHOOL DISTRICT, A NEVADA POLITICAL SUBDIVISION, APPELLANT, *v.* VIRTUAL EDUCATION SOFTWARE, INC., A NEVADA CORPORATION, RESPONDENT.

No. 50313

August 6, 2009 213 P.3d 496

*C.W. Hoffman Jr.*, General Counsel, and *S. Scott Greenberg*, Associate General Counsel, Las Vegas, for Appellant.

*Jolley Urga Wirth Woodbury & Standish* and *L. Christopher Rose* and *William R. Urga*, Las Vegas, for Respondent.

# OPINION

By the Court, HARDESTY, C.J.:

In this appeal, we consider two issues of first impression in a business defamation action. First, we consider whether the absolute privilege applies to defamatory communications made by a non-lawyer in anticipation of a judicial proceeding. Second, we consider whether allegedly defamatory statements made about a business's product provide a basis for defamation per se or for business disparagement.

We conclude that the absolute privilege affords parties to litigation the same protection from liability that exists for an attorney for defamatory statements made during, or in anticipation of, judicial proceedings. Additionally, we conclude that when allegedly defamatory statements concern a business's product and the plaintiff seeks to redress injury to economic interest, the claim is one for business disparagement, not defamation per se.

## FACTS AND PROCEDURAL HISTORY

Appellant Clark County School District (CCSD) and Clark County Education Association (CCEA), the local teachers' union, are parties to a collective bargaining agreement, which sets the terms and conditions of employment for CCSD teachers. The agreement includes a provision for teachers to enhance their salaries by obtaining additional degrees, taking either upper-division, graduate-level courses or completing professional development courses offered by CCSD. However, educational courses that are not credit bearing toward a degree may be excluded from the courses eligible for salary enhancement. In addition, CCSD may deny credit for courses that it deems are of a ''frivolous nature.''

Respondent Virtual Education Software, Inc. (VESI), is a Nevada corporation that markets and sells computer-based instruction for educators and business professionals. VESI markets its distance-learning classes to various colleges and universities.

Until the fall of 2002, Chapman University (Chapman) and Southern Utah University (SUU) offered and administered VESI courses to CCSD teachers for salary enhancement. At that time, VESI had institutional agreements with Chapman and SUU, but VESI did not have a contractual relationship with CCSD.

Dr. George Ann Rice, the associate superintendent of CCSD's human resources department in 2002, had the responsibility for making the final determination as to whether a course complied with the collective bargaining agreement. Because of concerns regarding the academic rigor of VESI courses and their compliance with the

collective bargaining agreement, Dr. Rice asked her administrative assistant to research and evaluate the VESI courses.

As a result, several teachers informed VESI's president that CCSD was researching VESI courses for eligibility for salary enhancement. Concerned about the evaluation, VESI attempted to contact CCSD and Dr. Rice and provided two VESI courses to CCSD. After reviewing VESI's courses, Dr. Rice's assistant noted several concerns with the academic quality of the courses. In addition, Dr. Rice's assistant was unable to confirm that VESI's courses were offered at the graduate level by either Chapman or SUU, or that the courses were credit bearing towards a degree. As a result, Dr. Rice determined that the courses did not comply with the requirements of the collective bargaining agreement between CCSD and CCEA for salary enhancement.

In October 2002, VESI learned that CCSD was denying salary enhancement for its courses. VESI wrote several e-mails to CCSD, essentially demanding that CCSD accept the courses "before legal means need to be pursued." On November 6, 2002, Dr. Rice sent a letter to VESI's president, with copies to other school administrators and CCSD counsel, explaining CCSD's decision to deny salary advancement credit for VESI courses. Dr. Rice stated, in pertinent part:

> I have researched the VESI courses that you offer for graduate credit from the following universities: Chapman, University of Phoenix, and Southern Utah University. These courses are not credit bearing toward any degree offered by these universities. In addition, some of the courses can be completed in three to five hours and the tests can be successfully passed without reading the material, as evidenced by at least two of my employees. There is no safeguard to determine that the candidate is the one who actually takes the tests. The tests are largely consistent of factual information that can be memorized or copied as notes from the slides and do not require the analysis, synthesis and application levels usually required for graduate coursework.

VESI did not respond to Dr. Rice's letter. When teachers inquired about the status of VESI courses, CCSD explained that it would not accept VESI courses for salary enhancement.

## Procedural history

VESI filed a complaint with the district court, alleging five causes of action against CCSD, including defamation. The district court dismissed all but VESI's defamation claims.[1] VESI based its claims

---

[1] VESI did not appeal the dismissal of its remaining causes of action.

for defamation on Dr. Rice's November 6, 2002, letter to VESI's president, and at least 12 communications to CCSD teachers, including e-mails sent by CCSD administrative staff.

CCSD filed two motions for summary judgment seeking to dismiss the defamation claims. In its first motion, CCSD argued, in part, that VESI could not prove the elements of defamation and also asserted that the alleged defamatory statements constituted business disparagement, not defamation per se. Although VESI opposed the motion, it did not specifically respond to CCSD's argument regarding business disparagement. The district court summarily denied the first motion, without addressing business disparagement. In its second motion for summary judgment, CCSD argued that VESI could not prove defamation as a matter of law because the statements were either not defamatory or were privileged. On the second motion, the district court found that none of CCSD's statements were privileged as a matter of law but limited VESI's defamation claims to the November 6, 2002, letter and five e-mail communications.

At trial, VESI presented its case-in-chief, offering evidence that it had suffered an economic downturn, but only tenuously indicated that any economic damages were proximately caused by CCSD's statements. Although CCSD cross-examined VESI's witnesses, CCSD rested without presenting additional witnesses, documents, or other evidence. The jury returned a special verdict form, finding that four of the six communications constituted defamation by CCSD. Specifically, the jury found that, in addition to Dr. Rice's November 6, 2002, letter, three e-mail communications to individual CCSD teachers were defamatory. All three e-mails were written by Dr. Rice's assistant to individual teachers. The first e-mail provided, in part:

> This is not a new policy. The contract states that courses must be credit bearing towards a degree and courses such as those offered by VESI have only recently come to our attention as violating contract. Be wary of these 3rd party entities. If the university offering credit will not include them even as an elective in their program, there is something remiss with the course.

The second e-mail provided, in part:

> Credit bearing toward a degree does NOT mean a particular individual must be in that degree program, only that the university offering it values the course enough to allow at least elective credit w/i their own university. VESI is a consulting agency and many of the courses have been deemed ''[frivolous.]'' None of the colleges sponsoring the courses offer degree credit for them so, yes, they should not be taken for salary growth.

The third e-mail communication provided:

> Thank you for your recent letter to Dr. Rice regarding VESI courses. The 3 classes you have already taken . . . will be allowed for salary growth . . . but as they do not comply with the CCEA Negotiated agreement, please be sure any future courses are upper division or graduate credits and are listed in a degree program of the university offering the credit.

The jury awarded damages of $161,024 to VESI. The district court also found that VESI met its offer of judgment and was therefore entitled to an award of attorney fees. Thereafter, the district court awarded VESI prejudgment interest and attorney fees and entered judgment in VESI's favor in the total amount of $340,622.40. CCSD appeals.

## DISCUSSION

We address two of CCSD's issues on appeal. First, CCSD contends that the district court erred by denying summary judgment as to Dr. Rice's November 6, 2002, letter to VESI, arguing that the letter was absolutely privileged. Second, CCSD argues that VESI could not rely on the defamation per se doctrine to excuse the need to show special damages. Specifically, CCSD maintains that VESI's defamation claim should have been alleged as a claim for business disparagement, which differs from a defamation per se claim because the former requires proof of malice and special damages whereas the latter requires a showing of negligence and presumes damages.

Because we conclude that the absolute privilege applies to non-lawyers in anticipation of judicial proceedings, we hold that Dr. Rice's November 6, 2002, letter was absolutely privileged. We also conclude that the elements of a claim for business disparagement should be distinguished from the elements of a claim for defamation per se.[2] After determining that VESI's claims involve business disparagement, we conclude that VESI could not rely on presumed damages and did not present sufficient evidence to support the jury's verdict for economic damages. We therefore reverse the judgment.

---

[2]In its motions for summary judgment and on appeal, CCSD further argues that the four communications were not defamatory because they were true or substantially true. In the alternative, CCSD asserts that if the statements were false, they were not defamatory because they constituted opinions rather than facts. Additionally, CCSD argued that even if the statements were defamatory, they were also privileged under the "common interest privilege." Because we reverse the judgment on other grounds, we do not address these additional issues.

*The absolute privilege applies to communications made by nonlawyers where judicial proceedings have commenced or are under serious consideration*

CCSD argues that as to Dr. Rice's November 6, 2002, letter, the district court erred in denying CCSD's motion for summary judgment because Dr. Rice sent the letter in response to VESI's threat to file a civil lawsuit against CCSD and the letter was therefore absolutely privileged. VESI contends that the absolute privilege does not apply because the privilege is limited to communications by lawyers representing clients.

A district court's order denying summary judgment is an interlocutory decision and is not independently appealable. *GES, Inc. v. Corbitt*, 117 Nev. 265, 268, 21 P.3d 11, 13 (2001). However, where a party properly raises the denial of summary judgment on appeal from the final judgment, this court will review the decision de novo. *Id.*; *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when the pleadings and other evidence establish that "no 'genuine issue as to any material fact [remains] and that the moving party is entitled to a judgment as a matter of law.'" *Wood*, 121 Nev. at 729, 121 P.3d at 1029 (alteration in original) (quoting NRCP 56(c)).

It is a "long-standing common law rule that communications [made] in the course of judicial proceedings [even if known to be false] are absolutely privileged." *Circus Circus Hotels v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983). In addition, the applicability of the absolute privilege is a matter of law for the court to decide, which this court will review de novo. *Id.* at 62, 657 P.2d at 105; *Fink v. Oshins*, 118 Nev. 428, 432, 49 P.3d 640, 643 (2002). Further, because the scope of the absolute privilege is broad, a court determining whether the privilege applies should resolve any doubt in favor of a broad application. *Fink*, 118 Nev. at 433-34, 49 P.3d at 644.

In *Fink v. Oshins*, we determined that an attorney's statements made to his client were absolutely privileged after his client began seriously considering commencing proceedings to remove the defendant as cotrustee of a trust. *Id.* at 434, 49 P.3d at 644. In order to support the interpretation of the absolute privilege in *Fink* and in other cases, we have relied on the Restatement (Second) of Torts section 587, which does not limit the application of the absolute privilege to attorney communications. *Fink*, 118 Nev. at 433 n.13, 49

P.3d at 644 n.13;[3] *see also Pope v. Motel 6*, 121 Nev. 307, 316, 114 P.3d 277, 283 (2005); *K-Mart Corporation v. Washington*, 109 Nev. 1180, 1191 n.7, 866 P.2d 274, 282 n.7 (1993), *receded from on other grounds by Pope*, 121 Nev. at 316-17, 114 P.3d at 283. The purpose of the absolute privilege is to afford all persons freedom to access the courts and freedom from liability for defamation where civil or criminal proceedings are seriously considered. Restatement (Second) of Torts § 587 cmts. a, e (1977). Therefore, the absolute privilege affords parties the same protection from liability as those protections afforded to an attorney for defamatory statements made during, or in anticipation of, judicial proceedings. Restatement (Second) of Torts § 587 cmt. d (1977).

Thus, where a judicial proceeding has commenced or is, in good faith, under serious consideration, we determine no need to limit the absolute privilege to communications made by attorneys. *See Hall v. Smith*, 152 P.3d 1192, 1195-96 (Ariz. Ct. App. 2007) ("The privilege applies to both attorneys and parties to litigation."). In *Hall v. Smith*, an Arizona Court of Appeals also relied on the Restatement (Second) of Torts section 587 to conclude that the absolute privilege applies to both attorneys and parties to litigation. *Id*. We concur for two reasons. First, there is no good reason to distinguish between communications between lawyers and nonlawyers. Second, it is anticipated that potential parties to litigation will communicate before formally retaining counsel.

Consequently, we extend the protections of the absolute privilege to instances where a nonlawyer asserts an alleged defamatory communication in response to threatened litigation or during a judicial proceeding. Thus, just as we announced in *Fink*, for the privilege to apply (1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation. 118 Nev. at 433-34, 49 P.3d at 644.

In this case, we conclude that Dr. Rice's November 6, 2002, letter was absolutely privileged. Before November 6, 2002, VESI demanded that CCSD accept its courses for salary enhancement. VESI sent an e-mail to Dr. Rice explaining its intent to "turn this matter over" to legal counsel. The e-mail also informed Dr. Rice

---

[3] Although in *Fink*, 118 Nev. at 435 n.16, 49 P.3d at 645 n.16, we also cite and rely on Restatement (Second) of Torts section 586, which discusses the absolute privilege as it applies to attorneys, comment e of Restatement (Second) of Torts section 587 explicitly makes clear that the protection from liability for defamation accorded to an attorney under section 586 applies equally to parties to litigation. Restatement (Second) of Torts § 587 cmt. e (1977).

that VESI attorneys planned to send a demand letter to CCSD, requiring that CCSD draft a written statement formally accepting VESI courses for salary enhancement. If CCSD did not draft the formal acceptance, VESI would file "a civil petition against you, Dr. Rice, and the CCSD to allow the courts to decide on this matter."

In response, Dr. Rice sent the November 6, 2002, letter to explain the reasons why CCSD would not comply with VESI's demand to accept its courses for salary enhancement. Dr. Rice's letter to VESI was in response to VESI's threat to initiate legal action against CCSD. The letter would be absolutely privileged had it been drafted by CCSD's legal counsel; therefore, we conclude that the protections afforded by the absolute privilege should be extended to Dr. Rice, who was a party involved in a dispute where judicial proceedings were under serious consideration.

Accordingly, we reverse the district court's denial of summary judgment as to the November 6, 2002, letter because it was absolutely privileged as a matter of law.

*Where the defendant's defamatory communications injured the entity's business reputation, the claim is one for business disparagement, not defamation per se*

CCSD also maintains that the defamation per se doctrine is not applicable in this case and that VESI did not present substantial evidence of actual damages. Specifically, CCSD contends that defamation, by its definition, tends to injure individuals, and because VESI is a business, it would be unmerited for any alleged defamatory statements to necessarily constitute defamation per se. CCSD further argues that absent presumed damages under the defamation per se doctrine, VESI failed to prove actual damages, such as the loss of business or sales, attributable to CCSD's statements.

This court will not overturn a jury's verdict if the verdict is supported by " 'substantial evidence, unless, [considering] all the evidence . . . , the verdict was clearly wrong.' " *Wohlers v. Bartgis*, 114 Nev. 1249, 1261, 969 P.2d 949, 958 (1998) (quoting *Bally's Employees' Credit Union v. Wallen*, 105 Nev. 553, 555-56, 779 P.2d 956, 957 (1989)). On appeal, this court views all facts from the viewpoint of the prevailing party and assumes that the jury believed all evidence favorable to the prevailing party. *Id.*

VESI contends that CCSD's statements constituted defamation per se because they impugned VESI's lack of fitness for trade, business, or profession. VESI further argues that even if the defamation per se doctrine is not applicable, evidence adduced at trial showed a substantial decline in profits after CCSD communicated to teachers that it would not award salary enhancement for VESI courses.

An action for defamation requires the plaintiff to prove four elements: ''(1) a false and defamatory statement . . . ; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages.'' *Pope*, 121 Nev. at 315, 114 P.3d at 282; *see Lubin v. Kunin*, 117 Nev. 107, 111, 17 P.3d 422, 425 (2001). However, if the defamatory communication imputes a ''person's lack of fitness for trade, business, or profession,'' or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed. *K-Mart Corporation*, 109 Nev. at 1192, 866 P.2d at 282.

Our opinions concerning defamation per se have discussed defamatory communications in relation to individuals. *See Bongiovi v. Sullivan*, 122 Nev. 556, 138 P.3d 433 (2006) (affirming that defendant plastic surgeon was liable for defamation per se after the defendant told plaintiff's potential client that the plaintiff was being investigated for the recent death of another patient); *K-Mart Corporation*, 109 Nev. at 1192, 866 P.2d at 282 (holding that the act of placing a customer in handcuffs and walking him throughout the store constituted defamation per se); *Nevada Ind. Broadcasting v. Allen*, 99 Nev. 404, 664 P.2d 337 (1983) (concluding that a political candidate was entitled to recover under defamation per se for comments that injured his professional reputation). However, we have not clearly stated whether a corporation or other business entity can proceed on a theory of defamation per se where communications concern the business's product or injure the business's reputation.

A claim for defamation per se primarily serves to protect the personal reputation of an individual. 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 312 (2005); *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987). But where communications concern the goods or services provided by a business entity, a plaintiff generally seeks to redress injury to economic interests. 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 312 (2005). This distinction is the basis for the difference between an action for defamation per se and an action for business disparagement. *Id.* Unlike defamation per se, communications constituting business disparagement are not directed at an individual's personal reputation; rather, they are injurious falsehoods that interfere with the plaintiff's business and are aimed at the business's goods or services. *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). Thus, if a statement accuses an individual of personal misconduct in his or her business or attacks the individual's business reputation, the claim may be one for defamation per se; however, if the statement is directed towards the quality of the individual's product or

services, the claim is one for business disparagement. 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 312 (2005).

Based on the foregoing authority, we conclude that the three e-mails sent by CCSD to individual teachers did not constitute defamation per se. The statements were not directed toward an individual's business or professional reputation; rather, the statements concerned the fitness of VESI's product. In addition, VESI did not seek to redress injury to the personal reputation of an individual, it sought compensation for its business's economic losses. Therefore, we conclude that VESI's claim is not one for defamation per se, but more appropriately is one for business disparagement. Moreover, we conclude that even if VESI had properly brought its claim as one for business disparagement, it could not have prevailed as a matter of law.

The elements required to prove a cause of action for business disparagement differ from the elements required to prove classic defamation and, necessarily, defamation per se. *Hurlbut*, 749 S.W.2d at 766. To succeed in a claim for business disparagement, the plaintiff must prove: (1) a false and disparaging statement,[4] (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages. *Id.* Notably, the principal differences between defamation per se and business disparagement concern the elements of intent and damages. As opposed to defamation, which merely requires some evidence of fault amounting to at least negligence, business disparagement requires something more, namely, malice. Malice is proven when the plaintiff can show either that the defendant published the disparaging statement with the intent to cause harm to the plaintiff's pecuniary interests, or the defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth. *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 722, 57 P.3d 82, 92-93 (2002); *Hurlbut*, 749 S.W.2d at 766; Restatement (Second) of Torts § 623A (1977).

As for the element of damages, defamation requires that the plaintiff prove special damages in the form of pecuniary loss only in limited circumstances. *Hurlbut*, 749 S.W.2d at 766. However, proof of

---

[4]Restatement (Second) of Torts section 629 defines a disparaging statement as one that is

> understood to cast doubt upon the quality of another's land, chattels or intangible things, or upon the existence or extent of his property in them, and
>> (a) the publisher intends the statement to cast doubt, or
>> (b) the recipient's understanding of it as casting the doubt was reasonable.

special damages is an essential element of business disparagement. *Id.* at 767. Moreover, in a business disparagement claim, the plaintiff must prove that the defendant's disparaging comments are the proximate cause of the economic loss. *Id.*; *Advanced Training Sys. v. Caswell Equip. Co.*, 352 N.W.2d 1, 7-8 (Minn. 1984). Hence, a cause of action for business disparagement requires that the plaintiff set forth evidence proving economic loss that is attributable to the defendant's disparaging remarks. *Advanced Training Sys.*, 352 N.W.2d at 7. Lastly, if the plaintiff cannot show the loss of specific sales attributable to the disparaging statement, the plaintiff may show evidence of a general decline of business. *Id.* at 7-8; 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 322 (2005). Nonetheless, the general decline of business must be the result of the disparaging statements and the plaintiff must eliminate other potential causes. *Advanced Training Sys.*, 352 N.W.2d at 7-8; 53 C.J.S. *Libel and Slander; Injurious Falsehood* § 322 (2005).

 ██

We thus conclude that VESI failed as a matter of law to establish the elements of intent and damages for a claim of business disparagement. First, although there was substantial evidence for the jury to conclude that the information contained in the e-mail communications was false and disparaging, VESI failed to prove that CCSD maliciously intended to cause VESI pecuniary loss, or that CCSD acted with malice because it knew the statements were false or acted in reckless disregard of their falsity. CCSD drafted the e-mail communications in response to individual teachers' inquiries regarding whether CCSD would accept VESI courses for salary enhancement. Although there was some indication that the statements in the e-mails may be false, VESI did not present evidence for the jury to conclude that CCSD acted with reckless disregard when it responded to teachers' questions or concerns regarding VESI's courses.

 ██

Likewise, VESI did not provide sufficient evidence to prove special damages. Although VESI presented evidence showing that after the e-mails were transmitted, it suffered a loss in profit due to declining sales, it did not prove that the pecuniary loss was proximately caused by the disparaging statements. First, the statements were narrowly transmitted to individual teachers, and VESI did not prove that the recipient teachers republished the disparaging statements. Secondly, VESI failed to show that its economic losses were a result of the disparaging statements and not merely a result of CCSD's decision to deny teachers salary enhancement for VESI courses. Thus, VESI neither proved specific losses in sales attributable to CCSD's disparaging statements nor eliminated CCSD's decision to deny

VESI's courses for purposes of salary enhancement as a cause for the general decline in business.

Therefore, we conclude that, had the district court instructed the jury on a claim for business disparagement, the jury could not have found that CCSD's disparaging statements were malicious or caused VESI's pecuniary loss. *See El Cortez Hotel, Inc. v. Coburn*, 87 Nev. 209, 213, 484 P.2d 1089, 1091 (1971) (standing for the proposition that if the district court had not erred, the result would not have been substantially different). Accordingly, we reverse the judgment.

## CONCLUSION

The district court improperly denied summary judgment as to Dr. Rice's November 6, 2002, letter to VESI because the letter was absolutely privileged. The absolute privilege applies to both lawyers and nonlawyers who make defamatory statements during a judicial proceeding or where a judicial proceeding is under serious consideration. Because Dr. Rice sent the November 6, 2002, letter in response to VESI's threat to file a civil lawsuit against CCSD, we conclude that the letter was in response to anticipated litigation and was, therefore, absolutely privileged. Accordingly, we reverse the district court's denial of summary judgment as to the November 6, 2002, letter.

Secondly, we reverse the jury's verdict as to the remaining three e-mail communications since the verdict was improperly based on a claim for defamation per se. Because VESI sought compensation for economic loss for defamatory statements about its products, VESI's claim was one for business disparagement and not defamation per se. Further, VESI could not have proven the elements of business disparagement because it did not produce sufficient evidence of malice or of special damages that were proximately caused by CCSD's disparaging statements. Accordingly, we reverse the district court's judgment.

PARRAGUIRRE and DOUGLAS, JJ., concur.