129 Nev., Advance Opinion 35

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ROBERT CUCINOTTA, AN
INDIVIDUAL; AND KARIM
MASKATIYA, AN INDIVIDUAL,
Appellants,
vs.
DELOITTE & TOUCHE, LLP, A
DELAWARE CORPORATION; AND
LARRY KRAUSE, AN INDIVIDUAL,
Respondents.

No. 58727

FILED

MAY 30 2013

Appeal from a district court order granting summary judgment in a defamation action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Affirmed.*

Cooper Levenson April Niedelman & Wagenheim, P.A., and Jerry S. Busby, Las Vegas; Beus Gilbert PLLC and Scot Stirling and Leo Beus, Scottsdale, Arizona,
for Appellants.

Morris Law Group and Rosa Solis-Rainey, Las Vegas; Paul, Weiss, Rifkind, Wharton & Garrison LLP and Charles E. Davidow, Washington, D.C.; Paul, Weiss, Rifkind, Wharton & Garrison LLP and Brad S. Karp and Andrew J. Ehrlich, New York, New York,
for Respondents.

13-15864

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, CHERRY, J.:

In this opinion, we consider whether information divulged by a registered accounting firm in accordance with the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, is subject to an absolute privilege in a defamation action. We conclude that an accounting firm should be encouraged to freely disseminate information concerning alleged illegal acts as long as the disclosure is made pursuant to federal securities law and made to the appropriate level of management. In recognition of the reporting responsibilities delegated to accounting firms to protect the investing public, we adopt the rule set forth in the Restatement (Second) of Torts section 592A (1977), and consequently, we conclude that one who is required by law to publish defamatory matter is absolutely privileged to publish it. Accordingly, we affirm the district court's summary judgment albeit on different grounds.

## FACTS

In 2007, respondent Deloitte & Touche, LLP, a registered public accounting firm, performed a third-quarter financial audit for Global Cash Access Holdings, Inc. (GCA), a publicly traded company providing cash access services to the gaming industry. Respondent Larry Krause, a certified public accountant employed by Deloitte, served as an independent auditor for many clients in the gaming industry, including

---

[1]The Honorable Kristina Pickering, Chief Justice, voluntarily recused herself from participation in the decision of this matter.



GCA. During the course of a financial audit for another gaming client, Krause obtained an intelligence bulletin authored by the Federal Bureau of Investigation (FBI) that contained information about alleged illegal acts committed by GCA and two members of its board of directors, appellants Robert Cucinotta and Karim Maskatiya. Due to the serious allegations in the intelligence bulletin, Deloitte's senior management and in-house counsel contacted the FBI and the Department of Justice (DOJ) to confirm the validity of the document. Although the DOJ advised against further dissemination of the document, Deloitte believed it had a duty under federal securities law to disclose the allegations within the intelligence bulletin to GCA's Audit Committee, which is a subcommittee of GCA's Board of Directors. Deloitte's in-house counsel prepared a script summarizing the allegations in the intelligence bulletin. Krause, along with a senior Deloitte auditor, subsequently communicated the allegations in the intelligence bulletin[2] to the Audit Committee via conference call.

The script stated, in part, that Deloitte had "learned from a credible, confidential source that serious allegations have been made regarding transactions and conduct involving Global Cash Access and its principals." Deloitte listed the allegations, all of which were serious in nature. Deloitte requested that the Audit Committee conduct an independent investigation.

GCA issued a press release announcing that it would delay filing its third-quarter report pending the conclusion of an internal investigation. The investigation performed by a national law firm with

---

[2]A New York state court later ordered Deloitte to provide Cucinotta with a copy of the intelligence bulletin.

experience in regulatory and compliance issues revealed no evidence of misconduct on the part of GCA, Cucinotta, or Maskatiya. GCA accepted the findings and issued a delayed third-quarter report. GCA's stock price significantly declined as a result of the delay in reporting. Soon thereafter, Cucinotta and Maskatiya resigned from GCA's Board of Directors.

Subsequently, Cucinotta and Maskatiya filed a complaint for defamation and tortious interference against Deloitte and Krause.[3] They alleged that Deloitte published defamatory statements to the Audit Committee and knowingly interfered with their contractual relationships and prospective economic advantage with GCA as a result of the defamatory statements. Upon the completion of limited pre-answer discovery, Deloitte filed a motion for summary judgment, arguing that both the defamation and tortious interference claims failed as a matter of law because its communications with the Audit Committee were absolutely or conditionally privileged. The district court granted Deloitte's motion for summary judgment, concluding that Deloitte's communications to the Audit Committee were protected by a conditional privilege as Cucinotta and Maskatiya did not present evidence that would permit a reasonable jury to conclude that Deloitte acted with actual malice. The district court further concluded that Deloitte's communications were also privileged for purposes of the tortious interference claim. Although the district court found that Deloitte had a duty under federal securities law to disclose the allegations to the Audit Committee in order for the Audit

---

[3]For the sake of clarity, we refer to respondents collectively as Deloitte.

 

Committee to investigate the allegations, the district court found it unnecessary to reach a conclusion as to whether Deloitte's statements were absolutely privileged. This appeal followed.

## DISCUSSION

At the turn of the twentieth century, Lawrence R. Dicksee, Professor of Accounting at the University of Birmingham and Lecturer at the London School of Economics, advocated that auditors ought to be granted absolute privilege in their reporting obligations. Lawrence R. Dicksee, *Auditing: A Practical Manual for Auditors* (Robert H. Montgomery ed., American ed. 1905). He proffered that "[i]f the Auditor is of the opinion that something which has been done by the Directors, or by any outside persons, calls for the attention of stockholders, he should . . . feel no hesitation in expressing his view." *Id.* at 269.

Dicksee's theory of candid and forthright disclosure in the auditing profession is now being encouraged by Deloitte who argued below and continues to argue on appeal that this court should adopt an absolute privilege for individuals required by law to publish defamatory statements as articulated by the Restatement (Second) of Torts section 592A (1977). The Restatement provides that "[o]ne who is required by law to publish defamatory matter is absolutely privileged to publish it." *Id.* We review the applicability of an absolute privilege de novo. *See Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 382, 213 P.3d 496, 502 (2009). Although the district court did not reach a conclusion as to whether Deloitte's communications to the Audit Committee were absolutely privileged, we have the discretion to address Deloitte's contention. *See Garff v. J.R. Bradley Co.*, 84 Nev. 79, 81-83, 436 P.2d 428, 430-31 (1968) (resolving an issue that the district court did not reach).

Certain communications, although defamatory, should not serve as a basis for liability in a defamation action and are entitled to an absolute privilege because "the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 61, 657 P.2d 101, 104 (1983) (discussing the absolute privilege created by NRS 612.265(7) for communications from an employer to the Employment Security Department). While we have long recognized the existence of an absolute privilege for defamatory statements made during the course of judicial or quasi-judicial proceedings, *Fink v. Oshins*, 118 Nev. 428, 433-34, 49 P.3d 640, 644 (2002); *Sahara Gaming Corp. v. Culinary Workers Union Local 226*, 115 Nev. 212, 218, 984 P.2d 164, 167 (1999); *Knox v. Dick*, 99 Nev. 514, 518, 665 P.2d 267, 270 (1983); *Nickovich v. Mollart*, 51 Nev. 306, 313, 274 P. 809, 810 (1929), we have yet to consider whether an absolute privilege is warranted for communications published under the law.[4]

Restatement (Second) of Torts section 592A "rests upon the principle that one who is required by law to do an act does not incur any liability for doing it." Restatement (Second) of Torts § 592A cmt. a (1977). Originally developed to be applied to radio and television stations, which were required by the Federal Communications Act to provide political candidates with equal opportunity to be heard without any ability to control what the candidates said, section 592A now applies "whenever the

---

[4]The Nevada Attorney General opined that the Restatement approach "appears to . . . be sound legal policy likely to be adopted and followed in Nevada." 86-7 Op. Att'y Gen. 20, 25 (1986).

one who publishes the defamatory matter acts under legal compulsion in so doing." Restatement (Second) of Torts § 592A cmt. b (1977). Jurisdictions throughout the country have adopted its rationale in cases where a party was compelled by law to publish defamatory information. *See, e.g., Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 425 (Ky. 2010) (those responsible for complying with Kentucky's Open Records Act should not be held liable for releasing embarrassing or humiliating information prepared in the regular course of business and placed in the appropriate file); *Johnson v. Dirkswager*, 315 N.W.2d 215, 223 (Minn. 1982) (those mandated by Minnesota's Data Privacy Act to disclose defamatory statements should be afforded an absolute privilege when exercising due care in the execution of the law); *Crowley v. FDIC*, 841 F. Supp. 33, 39-40 (D.N.H. 1993) (banks should be provided with absolute immunity from a defamation action when they obey federal financial law by reporting criminal activity).

We agree with our sister jurisdictions that those who are required by law to publish defamatory statements should be absolutely privileged in making such statements. However, we are concerned that unfiltered speech to unintended persons could instigate malicious conduct that would go unpunished. Therefore, we affirmatively adopt the Restatement (Second) of Torts section 592A, but require that (1) the communications be made pursuant to a lawful process, and (2) the communications be made to a qualified person. The class of absolutely privileged communications recognized by this court remains narrow and is limited to those communications made in judicial or quasi-judicial proceedings and communications made in the discharge of a duty under express authority of law.

We now determine whether Deloitte's communication to the Audit Committee should be subject to an absolute privilege. Registered public accounting firms are required by federal securities law, specifically the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, to take certain actions when, during the course of a financial audit, the firm "becomes aware of information indicating that an illegal act (whether or not perceived to have a material effect on the financial statements of the issuer) has or may have occurred." 15 U.S.C. § 78j-1(b)(1) (2006); *see* Thomas L. Riesenberg, *Trying to Hear the Whistle Blowing: The Widely Misunderstood "Illegal Act" Reporting Requirements of Exchange Act Section 10A*, 56 Bus. Law. 1417, 1417 (2001) (by enacting section 10A of the Securities Exchange Act—codified at 15 U.S.C. § 78j-1—Congress "intended to require auditors to blow the whistle on the fraudulent activities of their clients"); Larry Catà Backer, *Surveillance and Control: Privatizing and Nationalizing Corporate Monitoring After Sarbanes-Oxley*, 2004 Mich. St. L. Rev. 327, 388 (2004) (section 10A "imposed a duty on a reporting company's outside auditors to investigate and report to corporate management information indicating that an illegal act had taken place or might occur"). When an accounting firm becomes aware of information that an illegal act has occurred or may occur, then it must adequately inform the appropriate level of management of the issuer—in this case, GCA's Audit Committee—about the detected illegal acts as soon as practicable. 15 U.S.C. § 78j-1(b)(1)(B) (2010).

Here, Deloitte summarized allegations of illegal acts contained in an FBI intelligence bulletin to the Audit Committee in accordance with federal securities law. *See Pegasus v. Reno Newspapers, Inc.*, 118 Nev.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

706, 714, 57 P.3d 82, 87 (2002) (defamation occurs when a person publishes a false statement of fact). Because Deloitte discharged its duty pursuant to the lawful process set forth in 15 U.S.C. § 78j-1 and its announcement of allegedly defamatory information was made to GCA's Audit Committee, a qualified entity, we conclude that Deloitte's communications are subject to an absolute privilege, precluding appellants' defamation claim. In that regard, we also conclude that appellants' tortious interference claim is precluded because Deloitte's communications and conduct therein is afforded an absolute privilege. *Wichinsky v. Mosa*, 109 Nev. 84, 87-88, 847 P.2d 727, 729-30 (1993) ("absence of privilege or justification" is a necessary element to a tortious interference claim); *Las Vegas-Tonopah-Reno Stage Lines, Inc. v. Gray Line Tours of S. Nev.*, 106 Nev. 283, 287, 792 P.2d 386, 388 (1990) (same). As no genuine issues of fact remain, we find no error in the district court's grant of summary judgment in Deloitte's favor. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (explaining that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law).

## CONCLUSION

We adopt the Restatement (Second) of Torts section 592A and hold that one who is required by law to publish defamatory matter is absolutely privileged to publish it when (1) the communication is made pursuant to a lawful process, and (2) the communication is made to a qualified person. Deloitte's statement to GCA's Audit Committee is therefore absolutely

privileged as a matter of law because Deloitte communicated information about alleged illegal acts in accordance with federal securities law. We therefore affirm the district court's summary judgment, albeit for different reasons. *See Pack v. LaTourette*, 128 Nev. \_\_\_, \_\_\_, 277 P.3d 1246, 1248 (2012).

_____, J.
Cherry

We concur:

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Saitta

_____, J.
Hardesty

_____, J.
Douglas