130 Nev., Advance Opinion 44

# IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVEN C. JACOBS,
Appellant,
vs.
SHELDON G. ADELSON, IN HIS
INDIVIDUAL AND REPRESENTATIVE
CAPACITIES,
Respondent.

No. 58740

**FILED**

MAY 30 2014



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order, certified as final under NRCP 54(b), dismissing respondent from a defamation action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Reversed and remanded.*

Pisanelli Bice, PLLC, and Todd L. Bice, Debra L. Spinelli, and Jarrod L. Rickard, Las Vegas,
for Appellant.

Morris Law Group and Steve L. Morris and Ryan M. Lower, Las Vegas,
for Respondent.

---

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

Appellant sued respondent's companies for wrongful termination, making a number of allegations in the complaint against

---

[1]The Honorable Kristina Pickering, Justice, did not participate in the decision of this matter.

respondent personally. After respondent published a response to the allegations in the media, appellant sued him for defamation. The district court dismissed the defamation claim, concluding that respondent was protected from a defamation suit because his statements to the media were made in the context of a judicial action. Although statements made during the course of judicial proceedings are generally considered absolutely privileged and cannot form the basis of a defamation claim, we have yet to consider whether statements made to the media regarding ongoing or contemplated litigation are covered by this absolute privilege. We adopt the majority view that communications made to the media in an extrajudicial setting are not absolutely privileged, at least when the media holds no more significant interest in the litigation than the general public. Thus, we reverse the order of dismissal and remand this matter to the district court for further proceedings.

## FACTS

Appellant Steven C. Jacobs filed a wrongful termination complaint against Las Vegas Sands Corporation (LVSC) and Sands China, Ltd. (Sands China). LVSC is the controlling shareholder of Sands China. Sheldon G. Adelson is the chief executive officer and majority shareholder of LVSC and Jacobs' former employer. Although Adelson was not originally named as a defendant, Jacobs' complaint alleged that Adelson demanded Jacobs to engage in "illegal" activities while working for LVSC operations in Macau. Jacobs further alleged that his refusal to carry out those "illegal" demands resulted in threats by Adelson and Jacobs' eventual termination. The complaint also contained numerous attacks against Adelson personally, asserting that he made "outrageous demands" and referring to him as "notoriously bellicose" and "mercurial." It also attacked Adelson's behavior as "rude and obstreperous."

LVSC and Sands China filed a motion to dismiss the complaint, which resulted in a hearing that received widespread media attention. After the hearing, the *Wall Street Journal* published an online article about the case. According to the article, Adelson provided an e-mail response that allegedly said:

> While I have largely stayed silent on the matter to this point, the recycling of his allegations must be addressed.... We have a substantial list of reasons why Steve Jacobs was fired for cause and interestingly he has not refuted a single one of them. Instead, he has attempted to explain his termination by using outright lies and fabrications which seem to have their origins in delusion.

Jacobs subsequently amended his complaint, adding a claim for defamation per se against Adelson, LVSC, and Sands China. The amended complaint alleged that the statements published in the *Wall Street Journal* were false and defamatory, unprivileged, published maliciously and known to be false or in reckless disregard of the truth, and necessarily injurious to Jacobs' professional reputation.

Adelson, LVSC, and Sands China all filed motions to dismiss Jacobs' defamation claim, arguing that the statements were absolutely privileged communications made in the course of judicial proceedings or, in the alternative, were protected by the conditional privilege of reply. After a hearing on the motion to dismiss, the district court determined that Adelson's response to the *Wall Street Journal* was an absolutely privileged communication relating to the litigation. Based on its ruling that Adelson's statements were absolutely privileged, the district court declined to consider Adelson's alternative argument that his statements were covered by the conditional privilege of reply. The district court thus granted the motion to dismiss and, because the dismissal resolved all

SUPREME COURT
OF
NEVADA

(O) 1947A

3

claims against Adelson, certified its order as final under NRCP 54(b) for purposes of this appeal.

## DISCUSSION

*Standard of review*

We rigorously review a district court order granting an NRCP 12(b)(5) motion to dismiss, accepting all of the plaintiff's factual allegations as true and drawing every reasonable inference in the plaintiff's favor to determine whether the allegations are sufficient to state a claim for relief. *State ex rel. Johnson v. Reliant Energy, Inc.*, 128 Nev. ___, ___, 289 P.3d 1186, 1189 (2012). A complaint should be dismissed for failure to state a claim only "when it appears beyond a doubt that the plaintiff could prove no set of facts that would entitle him or her to relief." *Id.* We review de novo the district court's legal conclusions. *Buzz Stew, L.L.C. v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). We also review de novo the applicability of an absolute privilege. *Cucinotta v. Deloitte & Touche, L.L.P.*, 129 Nev. ___, ___, 302 P.3d 1099, 1101 (2013). Whether a statement is sufficiently relevant to the judicial proceedings to fall within the absolute privilege is a question of law for the court. *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 62, 657 P.2d 101, 105 (1983).

*The absolute privilege*

Nevada has long recognized the existence of an absolute privilege for defamatory statements made during the course of judicial and quasi-judicial proceedings. *See, e.g., Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc. (VESI)*, 125 Nev. 374, 382, 213 P.3d 496, 502 (2009); *Fink v. Oshins*, 118 Nev. 428, 432-33, 49 P.3d 640, 643-44 (2002); *Circus Circus Hotels*, 99 Nev. at 60, 657 P.2d at 104. This privilege, which acts as a complete bar to defamation claims based on privileged statements,

recognizes that "[c]ertain communications, although defamatory, should not serve as a basis for liability in a defamation action and are entitled to an absolute privilege because 'the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements.'" *Cucinotta*, 129 Nev. at ___, 302 P.3d at 1101 (quoting *Circus Circus Hotels*, 99 Nev. at 61, 657 P.2d at 104); *see also Hampe v. Foote*, 118 Nev. 405, 409, 47 P.3d 438, 440 (2002), *overruled on other grounds by Buzz Stew, L.L.C.*, 124 Nev. at 228 n.6, 181 P.3d at 672 n.6. An absolute privilege constitutes "an immunity, which protects against even the threat that a court or jury will inquire into a communication." *Hampe*, 118 Nev. at 409, 47 P.3d at 440.

In order for the absolute privilege to apply to defamatory statements made in the context of a judicial or quasi-judicial proceeding, "(1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation." *VESI*, 125 Nev. at 383, 213 P.3d at 503. Therefore, the privilege applies to communications made by either an attorney or a nonattorney that are related to ongoing litigation or future litigation contemplated in good faith. *Id.* When the communications are made in this type of litigation setting and are in some way pertinent to the subject of the controversy, the absolute privilege protects them even when the motives behind them are malicious and they are made with knowledge of the communications' falsity. *Id.* at 382, 213 P.3d at 502; *Circus Circus Hotels*, 99 Nev. at 60, 657 P.2d at 104. But we have also recognized that "[a]n attorney's statements to someone who is not directly involved with the actual or anticipated judicial proceeding will be covered by the absolute privilege only if the recipient of the communication is

'significantly interested' in the proceeding." *Fink*, 118 Nev. at 436, 49 P.3d at 645-46 (quoting *Andrews v. Elliot*, 426 S.E.2d 430, 433 (N.C. Ct. App. 1993)).

Here, even though Adelson's statements mentioned ongoing litigation, Jacobs argues that the district court improperly applied the absolute privilege because the statements were made outside of the judicial proceedings to disinterested persons, including the media and the press, and are thus unrelated to the litigation. Jacobs avers that the press lacks any legal interest in the outcome of this case and has no functional ties to his claims or Adelson's defenses. Adelson, in contrast, contends that the district court properly dismissed Jacobs' defamation claim because his statements are absolutely privileged since they were made during the course of this judicial proceeding and were directly related to the subject of this lawsuit—Jacobs' claim for wrongful termination. Adelson also argues that statements made to the media should be included in the scope of Nevada's absolute privilege rule. Because we decline Adelson's invitation to treat the media as "significantly interested" in the litigation, we agree with Jacobs' assessment that absolute privilege does not apply here.

*Application of the absolute privilege in the media context*

This court has not previously addressed whether the absolute privilege applies when the media is the recipient of the statement. We have, however, recognized that communications are not sufficiently related to judicial proceedings when they are made to someone without an interest in the outcome. *See Fink*, 118 Nev. at 436, 49 P.3d at 645-46.

The majority of states have determined that the absolute privilege does not apply when the communications are made to the media.[2] "'Communications made to newspapers and during press conferences have been almost universally found to be excluded from the protection of absolute privilege.'" *Med. Informatics Eng'g, Inc. v. Orthopaedics Ne., P.C.*, 458 F. Supp. 2d 716, 724 (N.D. Ind. 2006) (quoting *Williams v. Kenney*, 877 A.2d 277, 288 (N.J. Super Ct. App. Div. 2005)); *see, e.g., Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 (8th Cir. 1979) ("Publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion."); *Green Acres Trust v. London*, 688 P.2d 617, 622 (Ariz. 1984) (same); *Rothman v. Jackson*, 57 Cal. Rptr. 2d 284, 294-95 (Ct. App. 1996) (stating that the absolute privilege generally should not be extended to "litigating in the press"); *see also Milford Power Ltd. P'ship v. New England Power Co.*, 918 F. Supp. 471, 486 (D. Mass. 1996); *Seidl v. Greentree Mortg. Co.*, 30 F. Supp. 2d 1292, 1313-14 (D. Colo. 1998); *Kelley v. Bonney*, 606 A.2d 693, 707 (Conn.

[2]A few jurisdictions have held that, under certain circumstances, an attorney's statements to the media are absolutely privileged. *See, e.g., Prokop v. Cannon*, 583 N.W.2d 51, 58 (Neb. Ct. App. 1998) (extending the privilege to statements made by an attorney to a reporter after the dismissal of the first lawsuit). Other jurisdictions have found exceptions to the majority rule based on unique circumstances. *See, e.g., Johnston v. Cartwright*, 355 F.2d 32, 37 (8th Cir. 1966) (applying absolute privilege to a statement to a newspaper when all signs pointed to emerging litigation and the newspaper was a potential party); *Jones v. Clinton*, 974 F. Supp. 712, 731-32 (E.D. Ark. 1997) (applying absolute privilege to a lawyer's statements to the press denying allegations and questioning the plaintiff's motives, where the plaintiff publicly solicited a response); *Helena Chem. Co. v. Uribe*, 281 P.3d 237, 239-40 (N.M. 2012) (holding that an attorney's prelitigation statements to the press are absolutely privileged if a class action lawsuit is contemplated).

1992); *Kennedy v. Zimmermann*, 601 N.W.2d 61, 64-65 (Iowa 1999); *Kennedy v. Cannon*, 182 A.2d 54, 58 (Md. 1962).

These courts have concluded that the policy considerations underlying the absolute privilege rule are not applicable to statements made to the media. Statements made to the media "do little, if anything, to promote the truth finding process in a judicial proceeding . . . . [They] do not generally encourage open and honest discussion between the parties and their counsel in order to resolve disputes; indeed, such statements often do just the opposite." *Pratt v. Nelson*, 164 P.3d 366, 381 (Utah 2007). And allowing defamation claims for statements made to the media will not generally hinder investigations or the detailing of claims. *Milford Power*, 918 F. Supp. at 486; *see also Asay*, 594 F.2d at 698. Thus, the need for absolute privilege evaporates. *Milford Power*, 918 F. Supp. at 486. Because the privilege's purpose is not to protect those making defamatory comments but "to lessen the chilling effect on those who seek to utilize the judicial process to seek relief," these courts have declined to extend the privilege in this context. *Kirschstein v. Haynes*, 788 P.2d 941, 952-53 (Okla. 1990).

Based on the policy considerations underlying the absolute privilege, we adopt the majority view that statements made to the media are not subject to absolute privilege. Extension of the absolute privilege to cover statements to the media, when the media are not a party to the lawsuit or inextricably intertwined with the lawsuit, would not further the policy underlying the absolute privilege. This position is also in line with our previous caselaw acknowledging that the privilege was created in part because the public interest in free speech during litigation outweighs the possibility of abuse of the privilege through the making of false and

malicious statements. *See Cucinotta*, 129 Nev. at ___, 302 P.3d at 1101; *Circus Circus Hotels*, 99 Nev. at 61, 657 P.2d at 104. However, protecting speech made during a judicial proceeding does not warrant allowing the dissemination of defamatory communications outside of the judicial proceedings. *See Kelley*, 606 A.2d at 707; *Asay*, 594 F.2d at 697.

Here, there has been no cogent argument that the *Wall Street Journal* has any other interest than that of an observer in the litigation such that the communications were made outside the judicial proceedings. While Adelson's statements were connected to the litigation in that they addressed Jacobs' contentions, we "draw the line between bona fide litigation activities and a public relations campaign" as it concerns the absolute privilege. *Williams v. Kenney*, 877 A.2d 277, 290-91 (N.J. Super. Ct. App. Div. 2005). The dissent argues that the extensive media coverage of the underlying judicial proceedings in this case has resulted in both the media and the public becoming "significantly interested" in the proceedings, thus triggering the absolute privilege to Adelson's contested statements. We cannot agree.

As the dissent points out, we have previously determined that the absolute privilege only covers statements made to those without direct involvement in the judicial proceeding if the recipients of the communication are "significantly interested in the proceeding." *Fink v. Oshins*, 118 Nev. 428, 436, 49 P.3d 640, 645-46 (2002) (internal quotations omitted).[3] While we have yet to examine what constitutes a "significant

---

[3]Other jurisdictions do not have this requirement. *See, e.g., Helena Chem.*, 281 P.3d at 242 ("[P]ublishing a statement to a person with a direct interest in the judicial proceeding is not an independent element in the absolute privilege analysis." (internal quotation omitted)).

SUPREME COURT
OF
NEVADA

(O) 1947A

9

interest" in judicial proceedings, drawing from our analysis in *Fink*, the policy underlying the absolute privilege, and other relevant caselaw, we conclude that assessing the significant interest of the recipient requires review of the recipient's legal relationship to the litigation, not their interest as an observer. *See id.* at 436, 49 P.3d at 645-46; *cf. Hall v. Smith*, 152 P.3d 1192, 1197 (Ariz. Ct. App. 2007) (stating that resolution of the judicial privilege issue pivots on relationship of recipient to the legal proceedings).

A nonparty recipient must have a relevant interest in, or a connection to, the outcome of the proceeding. *See, e.g., Kanengiser v. Kanengiser*, 590 A.2d 1223, 1237 (N.J. Super. Ct. Law Div. 1991) (establishing that trustees and beneficiaries of a trust had a significant interest in potential litigation regarding the trust); *DeVivo v. Ascher*, 550 A.2d 163, 168 (N.J. Super. Ct. App. Div. 1988) (indicating that nonparty recipient was significantly interested because the records sought in the litigation were relevant to the amount owed to the recipient and the recipient "could properly have been joined as a party"); *cf. Theiss v. Scherer*, 396 F.2d 646, 648 (6th Cir. 1968) (noting that letter written by attorney was absolutely privileged because it was addressed to an attorney who represented a party with a financial interest in the proceeding, and copies were sent to individuals with direct financial interests in proceeding). Moreover, the nature of the recipient's interest in or connection to the litigation is a "case-specific, fact-intensive inquiry" that must focus on and balance the underlying principles of the privilege. *Hall*, 152 P.3d at 1199.

Looking then at the relationship between the *Wall Street Journal* and the underlying district court proceedings in this case, we

conclude that the newspaper does not have a direct interest in, or connection to, the outcome of the proceedings, other than as a spectator. *See Fink*, 118 Nev. at 436, 49 P.3d at 646; *Green Acres Trust*, 688 P.2d at 623; *Hall*, 152 P.3d at 1197. As explained by the Arizona Supreme Court in *Green Acres Trust v. London*, generally, "reporter[s] play[ ] no role in the actual litigation other than that of a concerned observer." 688 P.2d 617, 623 (Ariz. 1984). Accordingly, we conclude that the *Wall Street Journal* does not have any legal or financial interest in the underlying litigation, and thus, it is not significantly interested in the litigation for purposes of the absolute privilege. Essentially, because Adelson's statements were published to a disinterested party, they are not sufficiently connected to the judicial proceedings to warrant application of the absolute privilege.

*The conditional privilege of reply*

Adelson also argues that this court should affirm the district court's decision because he had a privileged right to reply to the defamatory allegations made by Jacobs. Adelson contends that his statements were directly responsive, proportionate, and relevant to Jacobs' defamatory statements made against him in the complaint. Jacobs responds by arguing that questions of qualified privilege cannot be determined at this point, as this affirmative defense turns on facts and a record that has not yet been developed.

The common law conditional privilege of reply "grants those who are attacked with defamatory statements a limited right to reply." *State v. Eighth Judicial Dist. Court (Anzalone)*, 118 Nev. 140, 149, 42 P.3d 233, 239 (2002). To illustrate the conditional privilege of reply, this court has previously explained that "'[i]f I am attacked in a newspaper, I may write to that paper to rebut the charges, and I may at the same time retort

upon my assailant, when such retort is a necessary part of my defense, or fairly arises out of the charges he has made against me.'" *Id.* at 149, 42 P.3d at 239 (quoting *Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1559 (4th Cir. 1994)). This privilege is not absolute, however. It may be lost "if the reply: (1) includes substantial defamatory matter that is irrelevant or non-responsive to the initial statement; (2) includes substantial defamatory material that is disproportionate to the initial statement; (3) is excessively publicized; or (4) is made with malice in the sense of actual spite or ill will." *Anzalone,* 118 Nev. at 149-50, 42 P.3d at 239.

The conditional privilege's application is generally a question of law for the court. *Anzalone,* 118 Nev. at 149, 42 P.3d at 239 (citing *Lubin v. Kunin,* 117 Nev. 107, 115, 17 P.3d 422, 428 (2001)). Although Adelson argued that the conditional privilege of reply applied to his statement, the district court specifically declined to consider these arguments. The factual record has not yet been developed, and we decline to address the applicability of the conditional privilege for the first time on appeal.[4]  *See Lubin,* 117 Nev. at 115, 17 P.3d at 428 (declining to

---

[4]Adelson also claims that his statements are not actionable because only factual assertions, not mere opinions, may sustain a defamation claim. While Adelson raised this issue in the district court, the district court resolved the motion to dismiss solely based on absolute privilege. Because this is an assessment for the fact-finder, we decline to address it here. Adelson may raise this issue on remand to the district court. *See State v. Eighth Judicial Dist. Court (Anzalone),* 118 Nev. 140, 150-51, 42 P.3d 233, 240 (2002); *Wynn v. Smith,* 117 Nev. 6, 18, 16 P.3d 424, 431 (2001).

determine whether a conditional privilege applied because, at the motion to dismiss stage, the defendants had not yet "alleged the privilege by answer, let alone established facts to show that the privilege applies").

For the foregoing reasons, we vacate the district court's dismissal order, and we remand this case to the district court for further proceedings consistent with this opinion.

_____, J.
Hardesty

We concur:

_____, J.
Douglas

_____, J.
Saitta

_____, D.J.
Montero

CHERRY, J., with whom GIBBONS, C.J., and PARRAGUIRRE, J., agree, dissenting:

I would affirm the district court's decision to apply the absolute privilege to Adelson's statement and would conclude that the privilege extends to statements made to the media. *See Prokop v. Cannon*, 583 N.W.2d 51, 58 (Neb. Ct. App. 1998).

As the majority acknowledges, the absolute privilege was created to protect certain types of communications "because 'the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements.'" *Cucinotta v. Deloitte & Touche, L.L.P.*, 129 Nev. ___, ___, 302 P.3d 1099, 1101 (2013) (quoting *Circus Circus Hotels, Inc. v. Witherspoon*, 99 Nev. 56, 61, 657 P.2d 101, 104 (1983)). To effectuate the underlying policy behind the absolute privilege, it must be applied to statements made to the media during the judicial process.

The now-pervasive media coverage of judicial proceedings has resulted in the media and the public becoming significantly interested in the proceedings. *See Fink v. Oshins*, 118 Nev. 428, 436, 49 P.3d 640, 645-46 (2002) (requiring that the recipient of the communication be either directly involved or significantly interested in the proceeding). In this era of the unrelenting 24-hour news cycle, the public interest would be served by hearing both sides of a legal dispute. When the media is covering a case, replies to allegations should be allowed as a right and should not subject the declarant to having to prove that he or she was acting in self-defense. People are often judged not on the outcome of their case, but on the media's portrayal of them during the proceedings. To tie their hands would unduly subject parties to restrictions on their personal and/or

professional need for freedom of speech at a time when the world is watching.

Through the media's access to the judicial process, Jacobs was allowed to tell his side of the story with impunity. To say that Adelson must wait to respond through a legal channel is absurd. There is no reason to constrain Adelson's response to future legal briefs and motions. It makes no difference if Adelson's statements were made in his legal briefs or directly to the media—the result is the same, widespread dissemination to the public. Adelson should not be subject to defamation claims in this instance merely based on the platform that he used.

As recognized in the election context, "it is our law and our tradition that more speech, not less, is the governing rule." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 361 (2010). Because of this, I would decline to limit the scope of the absolute privilege rule in Nevada. The natural avenue of response to the allegations covered in media is likewise through the media. Accordingly, I would conclude that Adelson's statement is absolutely privileged because it was made during the course of this judicial proceeding and directly relates to the subject of this lawsuit.

_____, J.
Cherry

We concur:

_____, C.J.
Gibbons

_____, J.
Parraguirre